Plymouth Family Division
No. 2011-304

IN THE MATTER OF RONALD BROWNELL AND IRENE BROWNELL

Argued: April 11, 2012
Opinion Issued: May 11, 2012

594

*Gordon R. Blakeney, Jr.*, of Concord, on the memorandum of law and orally, for the petitioner.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent.

DALIANIS, C.J. The petitioner, Ronald Brownell, appeals the final decree entered by the Plymouth Family Division (*Rappa*, J.) in his divorce from the respondent, Irene Brownell. The petitioner argues that the trial court erred when it: (1) considered his federal veterans' disability benefits as income for alimony purposes; (2) treated any potential post-divorce distributions from his mother's trust as marital property subject to distribution; (3) ordered him to pay the respondent $47,000 from his trust distributions, even though he had dissipated most of it before the divorce; and (4) found him in indirect civil contempt for failing to pay temporary alimony to the respondent and for violating the trial court's anti-hypothecation order. We affirm.

The following facts derive from the record. The parties were married for thirteen years. They separated in May 2010, and their final decree of divorce was entered in April 2011.

The petitioner is totally and permanently disabled. He receives $962 in monthly social security benefits and approximately $2,578 in monthly federal veterans' disability benefits. He receives federal veterans' disability benefits because he has post-traumatic stress disorder from serving in Vietnam. The respondent also suffers from post-traumatic stress disorder, as well as other ailments. She receives approximately $200 in monthly food stamps and has no savings or other assets.

The only marital asset is the petitioner's inheritance from a trust created by his mother. The petitioner is one of five beneficiaries of the trust; his sister is the trustee of the trust. The petitioner's mother died in March 2010. Between then and January 2011, the petitioner received $79,000 from the trust. Despite the trial court's November 2010 anti-hypothecation order, the petitioner spent all $79,000 by the time of the parties' final hearing in February 2011.

The petitioner used more than $30,000 to buy illegal narcotics. With the remainder, he bought himself a truck and a trailer, gave his children $9,000, and spent $6,000 on his daughter's wedding. The trustee estimated that the petitioner will receive an additional $15,000 from the trust.

Although the trial court's temporary order required the petitioner to pay the respondent $1,250 in monthly alimony, he did not do so. As a result, the respondent was unable to pay the mortgage on the marital home. By the time of the final hearing, the home had gone into foreclosure, and the respondent was homeless and living in a shelter.

The trial court specifically found that the petitioner had "no credibility." The trial court found that he lied at an August 2010 hearing when he testified that he had received, by that time, only $25,000 from the trust, when, in fact, he had received $41,000. The trial court found that he lied again a month later when he answered interrogatories indicating that, as of September 2010, he had only received $31,500 from the trust, when, in fact, he had received $51,000. The trial court found that the petitioner again lied in his December 2010 financial affidavit, which indicated that he had no cash, even though, in that month alone, he received $10,500 in cash from the trust, which he then spent on illegal drugs.

The parties' final divorce decree ordered the petitioner to pay the respondent one-half of his trust distributions, which the court calculated to be $47,000 ($79,000 received before divorce + $15,000 to be distributed after divorce = $94,000/2 = $47,000). The trial court also found the petitioner to be in indirect civil contempt for violating its temporary decree by not paying alimony as ordered and by hypothecating marital property. To purge himself of the contempt, the court ordered the petitioner to pay the alimony arrearage and to pay the respondent's attorney's fees associated with filing and prosecuting her contempt motions. The trial court authorized the respondent to perfect a lien against the petitioner's trailer and truck to secure the debt.

"We afford trial courts broad discretion in determining matters of property distribution, alimony and child support in fashioning a final divorce decree. We will not overturn the trial court's decision absent an unsustainable exercise of discretion." *In the Matter of Crowe & Crowe*, 148 N.H. 218, 221 (2002) (citation omitted). "If the court's findings can reasonably be made on the evidence presented, they will stand." *In the Matter of Letendre & Letendre*, 149 N.H. 31, 36 (2002). We address each of the petitioner's arguments in turn.

## I. Veterans' Disability Benefits

The petitioner first argues that federal law precludes the trial court from counting his monthly veterans' disability benefits as income for alimony purposes. RSA 458:19 (Supp. 2011) authorizes a trial court to award alimony if: (1) the party in need "lacks sufficient income, property, or both, including property apportioned in accordance with RSA 458:16-a, to

provide for such party's reasonable needs, taking into account the style of living to which the parties have become accustomed during the marriage"; (2) the party from whom alimony is sought "is able to meet reasonable needs while meeting those of the party seeking alimony, taking into account the style of living to which the parties have become accustomed during the marriage"; and (3) the party in need "is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs."

> In determining the amount of alimony, a trial court must consider: the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(l); and the federal tax consequences of the order.

RSA 458:19, IV(b). RSA 458:19, IV(c) expressly allows trial courts to "consider veterans' disability benefits collected by either or both parties to the extent permitted by federal law" when "determining amount and sources of income."

The petitioner contends that 38 U.S.C. § 5301(a)(1) (2006) precludes the trial court from considering his veterans' disability benefits as income for alimony purposes. Section 5301(a)(1) provides that federal veterans' disability benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." The petitioner argues that because "the amount of income available to [him] . . . from *alternative* sources is insufficient to cover the amount of the alimony payments," the trial court's alimony order effects an "attachment, levy, or seizure" of his veterans' disability benefits. 38 U.S.C. § 5301(a)(1).

The petitioner's contention is contrary to the governing law. *See In re Marriage of Wojcik*, 838 N.E.2d 282, 299 (Ill. Ct. App. 2005). "An overwhelming majority of courts have held that [federal veterans'] disability payments may be considered as income in awarding spousal support." *Urbaniak v. Urbaniak*, 807 N.W.2d 621, 626 (S.D. 2011) (quotation omitted). "These courts conclude that federal law does not prohibit an award of alimony against a spouse receiving military disability pay and, once alimony is awarded, federal law will not relieve the paying spouse from paying such alimony obligations, *even if most of the veteran's income consists of military disability benefits.*" *Id.* (emphasis added); *see Morales and Morales*, 214 P.3d 81, 85 (Or. Ct. App. 2009); *Youngbluth v. Youngbluth*, 6

A.3d 677, 687 n.3 (Vt. 2010); Annotation, *Enforcement of Claim for Alimony or Support, or for Attorneys' Fees and Costs Incurred in Connection Therewith, Against Exemptions*, 52 A.L.R.5TH 221, 372 (1997) ("With few exceptions, the cases hold that payments arising from service in the Armed Forces . . . , though exempt as to the claims of ordinary creditors, are not exempt from a claim for alimony, support, or maintenance . . . .").

■ In so concluding, courts have relied upon *Rose v. Rose*, 481 U.S. 619 (1987). The issue in *Rose* was whether a state court had jurisdiction to hold a disabled veteran in contempt for failing to pay child support when federal veterans' disability benefits were the veteran's only means of satisfying his obligation. *Rose*, 481 U.S. at 621-22. The veteran argued that federal law conflicted with and, thus, preempted state statutes that purport to give state courts jurisdiction over veterans' disability benefits. *Id.* at 625. The Court disagreed. *Id.* at 636. One of the federal provisions upon which the veteran relied was the precursor to section 5301(a). *Id.* at 630; *see Marriage of Strong v. Strong*, 8 P.3d 763, 770 (Mont. 2000). "After reviewing the legislative history" of the provision, "the Court held that [veterans'] disability benefits were never intended to be exclusively for the subsistence of the beneficiary." *Marriage of Strong*, 8 P.3d at 770; *see Rose*, 481 U.S at 634. Rather, they were intended to support "the veteran's family as well." *Rose*, 481 U.S. at 634. Accordingly, to recognize an exception to the statute's prohibition against attachment, levy, or seizure in the child support context "would further, not undermine, the federal purpose in providing these benefits." *Id.* The Court ruled, therefore, that "regardless of the merit of the distinction between the moral imperative of family support obligations and the businesslike justifications for community property division, . . . [the statute] does not extend to protect a veteran's disability benefits from seizure where the veteran invokes that provision to avoid an otherwise valid order of child support." *Id.*

■ Courts have used "the logic of *Rose*" to hold that "a state court is clearly free to consider post-dissolution disability income and order a disabled veteran to pay spousal support even where disability benefits will be used to make such payments." *Marriage of Strong*, 8 P.3d at 770 (quotation and brackets omitted). "These courts have held that the anti-attachment provisions of section 5301(a)(1) do not shield a veteran's benefits from being considered in an alimony or maintenance proceeding because a spouse seeking maintenance is not a 'creditor' under the statute but is instead seeking family support." *In re Marriage of Wojcik*, 838 N.E.2d at 300. These authorities "provide a compelling basis for concluding that a trial court may consider a former spouse's present and anticipated disability benefits" as income for alimony purposes. *Id.* at 301.

The petitioner argues that *Mansell v Mansell*, 490 U.S. 581, 594-95 (1989), requires a different result. We disagree. In *Mansell*, the court concluded that a different federal statute precludes state courts from "treat[ing] as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Mansell*, 490 U.S. at 587 n.6, 594-95. The petitioner's argument is based upon an overly broad interpretation of *Mansell*. "The federal question in *Mansell* was a narrow one: Whether federal law preempts the application of state community property laws to military retirement pay." *Morales and Morales*, 214 P.3d at 85 (quotation, brackets, ellipsis and emphasis omitted). "In other words, *Mansell* limits a state court's ability to treat military retirement pay that a retiree has waived in order to receive veterans' disability benefits as *property* that can be divided on the dissolution of a marriage." *Id.* "[N]early every state court that has addressed th[e] question has concluded that *Mansell* affects property division, *not* spousal support." *Id.* The petitioner's argument conflates the consideration of disability benefits for property division purposes with their consideration to determine alimony. *Youngbluth*, 6 A.3d at 687 n.3.

*II. Trust*

The petitioner next asserts that the trial court erred by treating any potential post-divorce distributions from his mother's trust as marital property subject to equitable distribution. We review *de novo* a trial court's determination that a particular asset is marital property as defined by RSA 458:16-a, I (2004); *see In the Matter of Chamberlin & Chamberlin*, 155 N.H. 13, 16 (2007). Under RSA 458:16-a, I, marital property subject to equitable distribution includes "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties."

The petitioner argues that his interest in any future distributions from his mother's trust is a mere expectancy, and, therefore, not a property interest subject to equitable distribution. *See In the Matter of Goodlander & Tamposi*, 161 N.H. 490, 495-98 (2011); *see also* RSA 564-B:8-814(b) (Supp. 2011).

> If a distribution to or for the benefit of a beneficiary is subject to the exercise of the trustee's discretion, whether or not the terms of a trust include a standard to guide the trustee in making distribution decisions, then the beneficiary's interest is neither a property interest nor an enforceable right, but a mere expectancy.

*In the Matter of Goodlander & Tamposi*, 161 N.H. at 495 (quotation and brackets omitted); *see* RSA 564-B:8-814(b).

■ The petitioner, however, has failed to provide a record sufficient for our review of this issue, which was his burden as the appealing party. *See Rix v. Kinderworks Corp.*, 136 N.H. 548, 553 (1992); *see also* SUP. CT. R. 13. We have no way of determining, based upon the record before us, what the terms of the trust are, and whether the petitioner's interest in the future distribution from the trust is "absolute, fixed and certain" or only a mere expectancy. *In the Matter of Goodlander & Tamposi*, 161 N.H. at 495 (quotation omitted). Absent a sufficient record, we must uphold the trial court's determination that the petitioner's interest in future distributions from his mother's trust is a property interest subject to equitable distribution. The amount of the future payment is not an issue in this appeal.

*III. Order to Pay Respondent $47,000*

The petitioner next contends that the trial court erred when it ordered him to pay the respondent $47,000 from his trust distributions. He argues that because, by the time of the final hearing, he had "in fact spent — or 'dissipated' essentially the entire amount" of the distributions, they no longer constituted property that "belong[ed]" to him, and, thus, could not be divided. RSA 458:16-a, I. He argues that "the record clearly shows [he] 'squandered' and no longer possessed" the money the trial court divided. Because "this money was no longer . . . among the 'tangible and intangible property and assets, real or personal belonging to' the petitioner, . . . [it] was not . . . 'property' subject to . . . equitable distribution." *See In the Matter of Chamberlin & Chamberlin*, 155 N.H. at 17-18 (corpus of irrevocable charitable trust established by spouses belonged to neither spouse and, thus, was not subject to equitable distribution; however, because parties retained right to receive distributions of interest from trust, this right was property subject to equitable distribution).

■ ■ We reject the petitioner's overly technical construction of RSA 458:16-a, I. Given the purpose of RSA 458:16-a (2004), which is to achieve equity, we hold that it would be contrary to legislative intent to "permit one spouse to squander marital property and render it impossible to make an equitable award of property." *Sharp v. Sharp*, 473 A.2d 499, 505 (Md. Ct. Spec. App. 1984). "[C]onsistent with the equitable purpose of distribution under statutes like [RSA 458:16-a], courts have held that dissipated property must be distributed like any other," even though it no longer exists. *Herron v. Johnson*, 714 A.2d 783, 786 (D.C. 1998); *see A.I.D. v. P.M.D.*, 408 A.2d 940, 943 (Del. 1979). Courts have ruled that when property is intentionally dissipated to avoid its inclusion in the property to be equitably distributed, "such intentional dissipation is no more than a fraud on marital rights." *Sharp*, 473 A.2d at 505. In such a case, courts treat "the

dissipated assets . . . as if they were existing marital property," and "then [either] constructively award[] [them] to the dissipating spouse as part of that spouse's share of the marital estate," or, if insufficient assets remain to compensate the innocent spouse, "order the dissipating spouse to pay a monetary award." 2 B. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:105, at 553-54 (3d ed. 2005). In the instant case, we hold that, having found that the petitioner dissipated his trust distributions, the *only* marital asset, the trial court did not err when it ordered him to pay the respondent her share of them.

*IV. Civil Contempt*

■ Finally, the petitioner challenges the trial court's contempt finding. "Contempt is an offense at common law — a specific and substantive offense that is separate and distinct from the matter in litigation out of which the contempt arose." *In the Matter of Kosek & Kosek,* 151 N.H. 722, 726 (2005). The difference between civil and criminal contempt is the character of the punishment. *Id.* at 727. In civil contempt, the punishment is remedial, coercive, and for the benefit of the complainant. *Id.* Civil contempt proceedings may result in fines payable to the complainant or an indeterminate jail sentence until the contemnor complies with the court order. *Id.* By contrast, the purpose of prosecution for criminal contempt is to protect the authority and vindicate the dignity of the court. *Id.* The criminal contemnor, unlike the civil contemnor, may be imprisoned for a determinate amount of time without the ability to purge the sentence. *Id.*

■ Contempts are either direct or indirect. *Bonser v. Courtney,* 124 N.H. 796, 808 (1984). Direct contempt is committed in the presence and immediate view of the court. *Id.* Each element of the contempt must be personally observed by the court. *Id.* Indirect contempt is committed outside the presence of the court and without the judge having full personal knowledge of every element of contempt. *Id.* It arises from events of which the presiding judge could not take judicial notice. *Id.*

Here, the court found the petitioner in indirect civil contempt for failing to comply with its temporary alimony order and for violating its antihypothecation order. After so finding, the trial court imposed sanctions. Specifically, the court ordered the petitioner to pay the respondent the amount of temporary alimony then in arrears, $8,750, and to pay her attorney's fees. The court also allowed the respondent to perfect a lien against the petitioner's travel trailer and truck to secure this debt. The court ordered that if the petitioner failed to comply with the court's order

on contempt, the respondent could enforce the lien and the petitioner would be responsible for any additional attorney's fees and costs associated with that action.

The petitioner argues that the trial court erred by finding him in indirect civil contempt without first finding that he had the ability to make the ordered payments. However, the record does not demonstrate that the petitioner ever made this argument in the trial court. Accordingly, it is not preserved for our review. *See In the Matter of Goodlander & Tamposi*, 161 N.H. at 506-07.

Alternatively, the petitioner contends that the trial court committed plain error. *See* SUP. CT. R. 16-A. The plain error rule allows us to consider errors not raised before the trial court. *State v. Ortiz*, 162 N.H. 585, 590 (2011). "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." SUP. CT. R. 16-A. "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." *Ortiz*, 162 N.H. at 590 (quotation omitted). To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). We have looked to federal plain error analysis for guidance in applying our plain error rule. *Id.*

We find no error. We have held that "the inability to comply with [a] court's order, whether in civil or criminal contempt proceedings, is a defense and, therefore, should be raised by the [contemnor]." *State v. Wallace*, 136 N.H. 267, 271 (1992); *see* Annotation, *Pleading and Burden of Proof, in Contempt Proceedings, as to Ability to Comply with Order for Payment of Alimony or Child Support*, 53 A.L.R.2D 591, 607 (1957) (noting that this represents the majority view). The petitioner never raised this defense. Accordingly, it was not error for the trial court to have failed to consider it. To the extent that the petitioner contends that the trial court may not incarcerate him before first finding that he has the ability to comply with its order, we observe that the trial court has not sought to do so. Therefore, this issue is not ripe for our review.

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.