Filed 3/2/18; prior opinion vacated

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re the Marriage of JANICE R. and ROBERT J. CASSINELLI. | |
| JANICE R. CASSINELLI, Respondent, v. ROBERT J. CASSINELLI, Appellant. | E063769 (Super.Ct.No. D54420) OPINION |

APPEAL from the Superior Court of Riverside County. Christopher B. Harmon, Judge. Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Ellen C. Dove and Ellen C. Dove for Appellant.

Julie M. Clark for Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II, IV, V, and VIII.

In 1964, Robert J. Cassinelli and Janice R. Cassinelli were married; in 1986, they were divorced. In the meantime, after 20 years of service, Robert had retired from the United States Air Force. In a stipulated judgment, the trial court awarded Janice her community property interest in Robert's military retired pay.

Fast forward 26 years. In 2012, it was determined that Robert had a combat-related disability. As a result, he became eligible to receive both veteran's disability benefits and combat-related special compensation (CRSC); to do so, however, he had to waive his retired pay. Before the waiver, Robert received $791 a month and Janice received $541 in retired pay (taxable). After the waiver, Robert received $1,743 a month in veteran's disability benefits and $1,389 a month in CRSC, for a total of $3,132 (tax-free); Janice received zero. As a result, the trial court ordered Robert to start paying Janice $541 a month in permanent and nonmodifiable spousal support.

Robert appeals. Among other things, he contends:

1. Under overriding federal law, the trial court lacked jurisdiction to make any award to Janice based on Robert's receipt of either veteran's disability benefits or CRSC.

2. The trial court erred by using spousal support as a remedy for the loss of a community property interest.

3. The trial court erred by making its award of spousal support nonmodifiable.

4. Because the judgment dividing the community property was long-since final, the trial court could not give Janice any remedy for the loss of her community property interest in the retired pay.

5.  All of Robert's income was "non-attachable" (i.e., exempt), and therefore he could not be required to use it to satisfy Janice's claim.

6.  Based on the relevant factors (see Fam. Code, § 4320), Janice was not entitled to spousal support, and the trial court abused its discretion by finding otherwise.

We agree that federal law prohibited the trial court from compensating Janice, in the form of spousal support or otherwise, for the loss of her share of Robert's retired pay. However, it could properly modify spousal support, provided it did so based on the relevant factors and not as compensation. Accordingly, we will reverse and remand with directions to hold a new trial on Janice's request for a modification of spousal support.

I

FACTUAL AND PROCEDURAL BACKGROUND

Janice and Robert were married in 1964. At that time, Robert was on active duty as a member of the United States Air Force. After 20 years of service, he retired from the military with the rank of Technical Sergeant.

In 1985, after 21 years of marriage, the parties separated. Janice then filed this marital dissolution proceeding.

In August 1986, pursuant to stipulation, the trial court entered a final judgment. It provided: "The Court finds that [Janice] has a 43.1% interest in [Robert]'s United States Air Force Pension, and that she shall receive the sum of Two Hundred Thirty ($230) Dollars per month, or 43.1% of said pension, whichever sum is greater. Said payments to commence on May 1, 1986, providing that [Robert] shall make such payments to [Janice]

3

until such time as the United States Air Force is able to process [Janice]'s claims so that her share of the military pension can be paid directly to her." The judgment reserved jurisdiction over the issue of spousal support.

Thereafter, Robert held several jobs, primarily as a teacher. He developed ischemic heart disease; in 2011, he had a quadruple bypass. In 2012, he took a medical retirement from teaching. His ischemic heart disease was presumed to be due to his exposure to Agent Orange in Viet Nam. (See 38 C.F.R. § 3.309.) Thus, also in 2012, the Department of Veterans Affairs determined that he had a service-connected disability, making him eligible for disability benefits. It was further determined that his disability was combat-related, making him eligible for CRSC.

In 2013, Robert elected to receive CRSC. Before his election, he was receiving $791 a month of his retired pay and Janice was receiving $541 a month of his retired pay. After his election, he received $1,743 a month in veteran's disability benefits and $1,389 a month in CRSC, for a total of $3,132 a month. These benefits were nontaxable. Janice received zero. However, when Robert made his election, he was not aware that it would affect Janice.

At the time of trial, Robert was 72 years old. His monthly income consisted of:

| | |
|---|---|
| Veteran's disability benefits | $1,743 |
| CRSC | $1,389 |
| State teacher's disability benefits | $1,433 |
| Social security benefits | $1,105 |

4

| Total | $5,670 |

His total monthly expenses were $5,577.

Janice was 71 years old. She worked part-time for Rite Aid. Her monthly income consisted of $1,673 in wages and $1,568 in social security, for a total of $3,286. After paying her monthly expenses, she testified, "[s]ome months I have [$]100, some months I have $50 [left over]."

If and when Janice stopped working, she would lose more than half her income, although she could get another $200 a month ("if I'm lucky") by drawing on $44,000 in a 401(k) account and $15,000 in an annuity.

In January 2014, Janice filed a motion to modify the judgment by ordering Robert to pay the amount of her share of his retired pay as "non-modifiable spousal support."

In opposition, Robert argued: (1) the property division in the judgment was final and could not be reopened; (2) "[f]ederal law which supersedes state law . . . prohibits the non-military spouse[']s participation in the member's disability combat pay"; (3) "some or all of [Robert's] income is protected from attachment"; and (4) the relevant statutory factors militated against an award of spousal support.

In August 2014, Janice filed a motion for attorney fees.

In January 2015, the trial court held a trial on both pending motions. After the trial, at the trial court's invitation, both parties filed supplemental declarations.

5

In April 2015, the trial court issued a written ruling. It acknowledged that, under federal law, it could not treat Robert's retired pay as community property. However, it ruled that it was not precluded from "tak[ing] equitable action" to compensate Janice.

It found that "[Robert's] voluntary election and the resulting termination of [Janice's] share of the military retirement" was a material change of circumstances. It further found that it would be a "miscarriage of justice" to allow Robert, acting unilaterally, to increase his military-source income from $791 (taxable) to $3,132 (tax-free) while reducing Janice's military-source income from $541 to zero. After discussing each of the factors listed in Family Code section 4320, it concluded that Janice was entitled to receive $541 a month in spousal support.

The trial court further found that, in 1986, when the original judgment was entered, Janice had a reasonable belief that her share of Robert's retired pay was non-modifiable. It therefore made its award of spousal support non-modifiable.

Finally, it awarded Janice $7,180 in attorney fees against Robert.

Robert filed a motion for reconsideration. The trial court denied the motion. Robert filed a timely notice of appeal.

II

EXPERT TESTIMONY

At trial, Janice called Attorney Richard Muir, as an expert on the law regarding the treatment of military-source payments in a divorce.

6

Robert objected to one question to Muir as calling for a legal conclusion; that objection was sustained. He objected to two other questions as irrelevant; those objections were overruled. Otherwise, he did not object to Muir's testimony, nor did he call any expert witness of his own. After trial, in a brief filed in lieu of closing argument, he argued that Muir was unqualified, that his opinions lacked foundation, and that he incorrectly stated the law.

In this appeal, Robert argues that the trial court erred by "adopt[ing] the fuzzy and mis[s]tated opinion of a non-expert . . . ." Ordinarily, Robert would be deemed to have forfeited this argument due to his failure to raise any objection until after trial. (Evid. Code, § 353, subd. (a).)

The problem, however, went beyond the mere admission of evidence. A witness cannot testify to a legal conclusion. This is true even if the witness is an attorney. (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178-1184.) "[I]t is 'emphatically . . . the province and duty of the judicial department . . . to say what the law is" [citation] . . . ." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 115.) "'[It] is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884.) Even if a legal conclusion is admitted, it does not constitute substantial evidence. (*WRI Opportunity Loans II LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532, fn. 3; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841-842.)

7

It follows that, regardless of whether Muir was correct or incorrect, qualified or unqualified, "fuzzy" or precise, his testimony was not substantial evidence. If and to the extent that the trial court relied on it, it erred. However, we need not decide whether this occurred. If the trial court did not rely on Muir's testimony, then the error was harmless. (See Cal. Const., art. IV, § 13; Code Civ. Proc., § 475; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 939.) If the trial court did rely on Muir's testimony, but Muir was correct about the law, then once again, the error was harmless; the trial court came to the right conclusion. And finally, if the trial court relied on Muir's testimony and Muir was incorrect about the law, then we must reverse based on the resulting legal error.

For these reasons, we have not included any of Muir's testimony in our statement of facts (part I, *ante*). (And for the same reasons, we also have not included any of the legal conclusions to which Robert testified, purportedly also as an expert, based on his own experience.)

III

FEDERAL LAW REGARDING MILITARY RETIRED PAY IN A DIVORCE

Robert contends that, as a matter of federal law, the trial court erred by awarding Janice spousal support to replace her interest in his retired pay.

A member of the armed services who retires based on length of service becomes entitled to retired pay. (10 U.S.C. §§ 1401 [Army], 6333 [Navy], 8991 [Air Force].)

Meanwhile, a veteran who becomes disabled as a result of an injury suffered or a disease contracted in the line of duty becomes entitled to disability benefits. (38 U.S.C. § 1110 [wartime disability], 1131 [peacetime disability].)[1]

"In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay. [Citation.]" (*Mansell v. Mansell* (1989) 490 U.S. 581, 583, fn. omitted; see 38 U.S.C. §§ 5304-5305.) "For example, if a military retiree is eligible for $1500 a month in retirement pay and $500 a month in disability benefits, he must waive $500 of retirement pay before he can receive any disability benefits." (*Mansell v. Mansell*, *supra*, at p. 584, fn. 1.) Unlike retired pay, veteran's disability benefits are not taxable. (38 U.S.C. § 5301(a); *Haas v. United States* (2012) 107 Fed.Cl. 1, 3.) Thus, normally a retiree is better off by making such a waiver.

Under California law, military retired pay that accrues based on service during marriage is community property. (*In re Marriage of Barnes* (1987) 43 Cal.3d 1371, 1374-1375; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 782.) Moreover, as a matter of federal law, the Uniformed Services Former Spouses Protection Act (FUSFSPA) allows a state court in a community property jurisdiction to treat "disposable retired pay" as community property. (10 U.S.C. § 1408(c)(1).) However, its definition of

---

**1** Any discussion of disability benefits in this opinion is limited to disability benefits under title 38, United States Code. Title 10, chapter 61, United States Code (10 U.S.C. § 1201 et seq.) provides a separate scheme of military disability benefits that is beyond the scope of our opinion.

"disposable retired pay" excludes any retired pay that has been waived in order to receive disability benefits. (10 U.S.C. § 1408(a)(4)(A)(ii).)

Accordingly, in *Mansell v. Mansell*, *supra*, 490 U.S. 581, the United States Supreme Court held that federal law prohibits a state court from treating the waived portion of military retired pay as community property. (*Id*. at pp. 594-595.) It acknowledged that its holding "may inflict economic harm on many former spouses," but it felt constrained by "the plain language of the statute" as well as by the statute's legislative history. (*Id*. at p. 594.)

More recently, in *Howell v. Howell* (2017) ___ U.S. ___ [137 S.Ct. 1400], the Supreme Court held that a state court cannot order a veteran "to indemnify the divorced spouse for the loss caused by the veteran's waiver." (*Id*. at p. *1402.) It explained: "[F]ederal law completely pre-empts the States from treating waived military retirement pay as divisible community property." (*Id*. at p. *1405.) "The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property, *i.e*., to restore that portion of retirement pay lost due to the postdivorce waiver. . . . Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." (*Id*. at p. *1406.)

The court concluded: "We recognize, as we recognized in *Mansell*, the hardship that congressional preemption can sometimes work on divorcing spouses. [Citation.]

10

But we note that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or . . . *take account of reductions in value when it calculates or recalculates the need for spousal support.* [Citations.]" (*Howell v. Howell*, *supra*, 137 S.Ct. at p. *1406, italics added.) **2**

In fairness to the trial court, it ruled before *Howell* was decided. Nevertheless, in light of *Howell*, it is now clear that it erred. Admittedly, it awarded Janice spousal support, rather than reimbursement or indemnification. Moreover, it purported to consider all of the factors listed in Family Code section 4320, and it made detailed findings with respect to each of these factors. Nevertheless, it came up with a support amount that was identical — down to the penny — to the amount of retired pay that Janice had lost. We cannot help but conclude that this was, in substance, reimbursement or indemnification. *Howell* was particularly critical of an award that "mirrors the waived retirement pay, dollar for dollar." (*Howell v. Howell*, *supra*, 137 S.Ct. at p. *1406, italics added.)

---

**2**       While *Howell* was pending, we issued an opinion in this case. (*In re Marriage of Cassinelli* (2016) 4 Cal.App.5th 1285.) Robert filed a petition for certiorari. After the Supreme Court decided *Howell*, it granted the petition, vacated our opinion, and remanded for reconsideration in light of *Howell*. (*Cassinelli v. Cassinelli* (2017) ___ U.S. ___ [138 S.Ct. 69].)

*Howell* also effectively overruled *In re Marriage of Chapman* (2016) 3 Cal.App.5th 719 [trial court could require military spouse to compensate civilian spouse for lost retired pay] and *In re Marriage of Krempin* (1999) 70 Cal.App.4th 1008 [same].

11

We do not mean to say that the trial court was wholly barred from awarding Janice spousal support as a result of Robert's waiver. His waiver, and the resulting reduction in her income, were changed circumstances which would tend — *ceteris paribus* — to increase her need for support. *Howell* specifically permitted a state court to take account of a military spouse's waiver of retirement pay in recalculating spousal support.

Before *Howell*, *In re Marriage of Perkins* (Wash. Ct. App. 2001) 107 Wn. App. 313 [26 P.3d 989] held that a military spouse's waiver of retirement pay can properly trigger a modification of the civilian spouse's support. There, the trial court had ordered the military spouse to pay the civilian spouse the same amount as her lost share of his retired pay, as "permanent compensatory spousal maintenance . . . ." (*Id*. at p. 317, italics omitted.) The appellate court accepted that *Mansell* prohibited any order for "dollar-for-dollar" reimbursement of the lost retired pay, even if it was labeled "maintenance." (*Id*. at p. 324.) However, a "dissolution court . . . may consider a spouse's entitlement to an *undivided* veteran's disability pension . . . as one factor relevant to an award of maintenance . . . , provided of course that it follows the usual state-law rules . . . ." (*Id*. at pp. 322-323.) In other words, "a trial court may award maintenance after considering all relevant factors, of which a military disability pension may be one." (*Id*. at p. 327.) Thus, it remanded "for reconsideration of maintenance." (*Ibid*.)

And in the wake of *Howell*, *Jennings v. Jennings* (2017) 2017 Ohio 8974 [2017 Ohio App. LEXIS 5406][3] similarly held that the trial court could take the military

---

[3] Ohio Court of Appeals decisions since May 1, 2002 are fully precedential, even if unpublished. (Ohio Sup. Ct. R. Rep. Op., Rule 3.4; see also *Lebrilla v. Farmers*

12

spouse's disability benefits into account in awarding support to the civilian spouse. (*Id.* at pp. \*\*5-\*\*10.) It noted that "the United States Supreme Court's comments in *Howell* . . . support the conclusion that a court may include VA disability benefits as a source of income to be considered in awarding spousal support." (*Id.* at p. \*\*9.)

We agree with *Perkins* and *Jennings*. We conclude that we must reverse the trial court's award of spousal support in lieu of the waived retirement pay but remand with directions to hold a new trial on Janice's request for a modification of spousal support.

IV

ENTITLEMENT TO SPOUSAL SUPPORT UNDER FAMILY CODE SECTION 4320

Robert contends that Janice is not entitled to any spousal support, because (1) she has been self-supporting ever since the 1986 divorce, and (2) she failed to show need. He also contends that particular findings regarding the Family Code section 4320 factors were not supported by the evidence.

For the reasons discussed in part III, *ante*, we must reverse the award of spousal support in any event. We decline to consider Robert's present contentions, for two reasons. First, it does not appear that the trial court ever appropriately considered the Family Code section 4320 factors. Although, as mentioned, it purported to do so, its consideration was subordinated to the goal of awarding Janice dollar-for-dollar

---

*Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 ["Opinions from other jurisdictions can be cited without regard to their publication status."].)

13

reimbursement. We have no way of knowing whether it would have made the same findings and used the same analysis if it had known that this outcome was forbidden.

Second, "'[a]n order for spousal support must be based on the facts and circumstances existing at the time the order is made.' [Citation.]" (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) Given the passage of time, there may have been — and there most likely *have* been — changes in the relevant circumstances.

We therefore leave it up to the trial court to consider these contentions for the first instance on remand. We express no opinion on whether Janice will be entitled to spousal support at all, or if she is, in what amount.

In a related contention, Robert argues that Janice gave false testimony. It is not clear what he wants us to do about it. He does not explain how the falsity was prejudicial; to the contrary, he asserts that it was "obvious to everyone in the courtroom" and that he "discussed [it] in some detail in [his] Closing Brief." In any event, the asserted falsehoods all pertained to the factors relevant to an award of spousal support listed in Family Code section 4320. Because we are directing the trial court to retry the issue of spousal support, Robert needs no other remedy.

Finally, Robert also contends that the trial court erred by making its award of spousal support nonmodifiable. Although this contention is moot, we discuss it briefly for the guidance of the trial court on remand.

Robert is correct. Unless otherwise agreed (Fam. Code, § 3651, subd. (d)), a support order may be modified at any time (*id*., subd. (a)), based on changed

14

circumstances (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479). We are not aware of any authority allowing a trial court — while support is still being paid and while it still has jurisdiction — to tie its own hands in this manner.

V

THE FINALITY OF JUDGMENTS

Robert contends that the trial court's order violates the finality of judgments.

"[P]ublic policy demands finality of litigation in the area of family law." (*In re Marriage of Thomas* (1984) 156 Cal.App.3d 631, 638.) Thus, "[g]enerally, once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it. [Citations.] . . . [M]arital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to 'modify' the judgment." (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499.)

One exception to this general rule is that "a judgment may contain an express reservation of jurisdiction authorizing the court to subsequently modify it. [Citations.]" (*In re Marriage of Thorne & Raccina*, *supra*, 203 Cal.App.4th at p. 500.) Here, the judgment contained an express reservation of jurisdiction regarding spousal support. Thus, the trial court did not violate finality principles by making a new order for spousal support.

COMBAT-RELATED SPECIAL COMPENSATION (CRSC)

In addition to veteran's disability benefits, Robert was also receiving CRSC. Both parties make much of this fact. Robert takes the position that the principles stated in *Mansell* and *Howard* also apply to CRSC. Accordingly, we will discuss what CRSC is and how it is involved in this case. We will conclude, however, that it is largely irrelevant.

CRSC is relatively new; it was first enacted in 2002. (10 U.S.C. § 1413a; Pub. L. 107-314 (Dec. 2, 2002) 116 Stat. 2574.)

For purposes of this opinion, CRSC may be viewed as a bonus payment that effectively eliminates the double-dipping penalty for those disabled veterans whose disabilities are combat-related. To be eligible for CRSC, a veteran must be eligible for both retired pay and disability benefits. (10 U.S.C. § 1413a(c)(1), (e).) It follows that, under the rule against double-dipping (38 U.S.C. §§ 5304-5305), the veteran must waive all retired pay up to the amount of the disability benefits. CRSC then basically restores the waived amount of retired pay (10 U.S.C. § 1413a(b)(1), (b)(2)) — but as "special compensation," and specifically *not* as retired pay. (See 10 U.S.C. § 1413a(g).) Like disability benefits, CRSC is nontaxable. (26 U.S.C. § 104(a)(4); Dept. of Def. Fin. Mgmt. Reg. 7000.14–R, vol. 7B, ch. 63 (Oct. 2017) (Fin. Mgmt. Reg.),[4] § 630101(D).)

---

[4] Available at <http://comptroller.defense.gov/Portals/45/documents/fmr/current/07b/07b_63.pdf> [as of Mar. 2, 2018].

Because CRSC is not retired pay — just as veteran's disability benefits are not retired pay — under FUSFSPA as construed in *Mansell*, a state court does not have jurisdiction to treat CRSC as community property. (10 U.S.C. §§ 1408(a)(4), (c)(1), § 1413a(g); Fin. Mgmt. Reg., *supra*, § 630101(C)(1).)

In this case, however, the trial court did not even arguably award Janice any interest in Robert's CRSC. Before Robert's election to receive CRSC, he was receiving $791 a month in retired pay and Janice was receiving $541 a month in retired pay, for a total of $1,332. After his election, they received no retirement pay, but Robert received $1,743 a month in veteran's disability benefits. In other words, the retired pay was more than wiped out by the disability benefits alone. Robert's election to receive CRSC did not cause any additional reduction in retired pay.

In many cases, an election to receive CRSC is the event that triggers a waiver of retired pay. As mentioned, a veteran cannot receive CRSC unless he or she also (1) receives disability benefits and (2) waives retired pay. Thus, when the civilian spouse asks why his or her flow of retirement benefits has suddenly dried up, he or she may be told it is because the military spouse has elected CRSC. That appears to be what happened here. Nevertheless, subject to one exception, CRSC is irrelevant to all of the issues before us.

The one exception is Robert's contention that the trial court erred because all of his income — veteran's disability benefits, state teacher's disability benefits, social

17

security, *and* CRSC — is exempt from creditor's claims.  We will discuss this in part VII, *post*.

VII

INCOME THAT IS EXEMPT FROM CREDITOR'S CLAIMS

Robert contends that his income is exempt from creditor's claims.[5]  However, he cites no supporting authority.

As already noted, Robert's income consists of veteran's disability benefits, state teacher's disability benefits, Social Security, and CRSC.  Arguably some or all of these funds would be exempt from an ordinary money judgment.  However, they are not exempt from a spousal support order.  Specifically, a spousal support order would be enforceable against Robert's:

1.  Veteran's disability benefits (although only up to the amount of his waiver of retired pay).  (42 U.S.C. §§ 659(a), 659(h)(1)(A)(ii)(V), 659(h)(1)(B)(iii); 5 C.F.R. § 581.103; *United States v. Murray* (1981) 158 Ga.App. 781, 785 [282 S.E.2d 372, 375].)

2.  CRSC.  (Fin. Mgmt. Reg., *supra*, § 630101(C)(2).)

3.  Social security benefits.  (42 U.S.C. §§ 659(a), 659(h)(1)(A)(ii)(I); *DeTienne v. DeTienne* (D.Kan. 1993) 815 F.Supp. 394, 396-397.)

4.  State teacher's disability benefits.  (Code Civ. Proc., § 704.110, subd. (c); Ed. Code, § 22006.)

---

[5]     Robert tends to conflate the issue of nondivisibility under *Mansell* with what he calls "non-attachability."  Nevertheless, they are distinct and we discuss them separately.

VIII

ATTORNEY FEES

Robert contends that the trial court erred by awarding attorney fees to Janice.

"Under [Family Code] sections 2030 and 2032, a family court may award attorney fees and costs 'between the parties based on their relative circumstances in order to ensure parity of legal representation in the action.' [Citation.] The parties' circumstances include assets, debts and earning ability of both parties, ability to pay, duration of the marriage, and the age and health of the parties. [Citation.]" (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657.)

"[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] '[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.)

Robert argues that Janice had sufficient income and savings to pay her counsel. However, "[t]he fact the applicant has sufficient personal resources to pay his or her own attorney fees and costs does not itself bar an order requiring the other party to pay part or all of the fees and costs requested." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2017) ¶ 14:158, p. 14-56, italics omitted.)

19

Robert also complains that the trial court awarded Janice the fees of her expert witness Muir, even though Muir's opinions were "ill-founded" and "misinformed" and Muir "deigned to mislead the Court . . . ." However, he cites no authority for the proposition that this is a basis for denying those fees to Janice (who, after all, still had to pay Muir). "'"[A]n appellate brief 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration."'' [Citation.]" (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 777.) In addition, Robert forfeited this argument by failing to raise it below.

To the extent that Robert's reply brief may be construed as raising any other arguments concerning attorney fees, we deem them forfeited by his failure to raise them in his opening brief. (*Estate of Moore* (2015) 240 Cal.App.4th 1101, 1107, fn. 3.)

We therefore conclude that Robert has not shown that the trial court abused its discretion by awarding attorney fees to Janice.

IX

DISPOSITION

The order appealed from is affirmed with respect to attorney fees but reversed with respect to spousal support. On remand, the trial court must hold a new trial on Janice's request for a modification of spousal support. Because relevant circumstances may have been changed since this appeal was filed, it must give the parties an

20

opportunity to submit new evidence.  In the interest of justice, each side shall bear its own costs.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ _____
P. J.

We concur:

McKINSTER _____
J.

CODRINGTON _____
J.