NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Hooksett Family Division
No. 2019-0065

IN THE MATTER OF SEAN BRAUNSTEIN AND JERICKA BRAUNSTEIN

Submitted: January 14, 2020
Opinion Issued: February 13, 2020

Sean Braunstein, self-represented party.

Granite State Legal Resources, of Concord (Anthony Santoro on the brief), for the respondent.

HICKS, J. The petitioner, Sean Braunstein (Husband), appeals the final decree and associated orders entered by the Circuit Court (Sadler, J.) in his divorce from the respondent, Jericka Braunstein (Wife). He argues, among other things, that the trial court erred by including his monthly federal veterans' disability benefits as income for child support purposes. We affirm.

We briefly recite the facts necessary to decide this appeal. Husband is unemployed and describes himself as medically retired and disabled. He receives veterans' disability income, social security disability income, and other federal benefits. According to Husband's financial affidavit, he receives approximately $5,000 monthly from those sources. Before the trial court, Husband asserted that his federal veterans' disability benefits did not qualify for inclusion as income for child support purposes pursuant to federal law, which, in turn, preempts state law. The trial court rejected Husband's assertion, determining that "under the statutory definition of income[,] all amounts should be included." (Footnote omitted.) See RSA 458-C:2, IV (2018)

(defining gross income for the purposes of calculating child support as including veterans' and disability benefits). This appeal followed.

On appeal, Husband reiterates the federal preemption arguments he made in the trial court. Preemption is essentially a matter of statutory interpretation. Hendrick v. N.H. Dep't of Health & Human Servs., 169 N.H. 252, 259 (2016). We review the trial court's statutory interpretation de novo. Id. We interpret federal law in accordance with federal policy and precedent. Id. When interpreting a statute, we begin with the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. When the language of the statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what Congress might have said, nor add words that it did not see fit to include. Id. We interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

The federal preemption doctrine is based upon the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2. Id. at 260. Article VI provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "There can be no dispute that the Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress." Rose v. Arkansas State Police, 479 U.S. 1, 3 (1986) (per curiam).

"Pre-emption may be either express or implied . . . ." FMC Corp. v. Holliday, 498 U.S. 52, 56 (1990) (quotation omitted). "Even without an express provision for preemption, . . . state law must yield to a congressional Act in at least two circumstances." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000). "When Congress intends federal law to occupy the field, state law in that area is preempted." Id. (quotation omitted). "And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." Id. An actual conflict exists when "it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." English v. General Electric Co., 496 U.S. 72, 79 (1990) (quotation and citation omitted); see Wenners v. Great State Beverages, 140 N.H. 100, 104 (1995). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." Crosby, 530 U.S. at 373.

Traditionally, "the regulation of domestic relations is . . . the domain of state law," and, therefore, there is "a presumption against preemption of state laws governing domestic relations." Hillman v. Maretta, 569 U.S. 483, 490 (2013) (quotation omitted). "[F]amily and family-property law must do major

2

damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." Id. at 490-91 (quotations omitted). "But family law is not entirely insulated from conflict pre-emption principles," and, thus, the United States Supreme Court has "recognized that state laws governing the economic aspects of domestic relations must give way to clearly conflicting federal enactments." Id. at 491 (quotation and ellipsis omitted).

Applying these principles, the United States Supreme Court in Rose v. Rose, 481 U.S. 619 (1987), "addressed expressly whether veterans' disability benefits could be considered by state courts as 'income' for purposes of calculating [child] support." Alwan v. Alwan, 830 S.E.2d 45, 49 (Va. Ct. App. 2019). The issue in Rose was whether a state court had jurisdiction "to hold a disabled veteran in contempt for failing to pay child support" when federal veterans' disability benefits were his "only means of satisfying [that] obligation." Rose, 481 U.S. at 621-22; see In the Matter of Brownell & Brownell, 163 N.H. 593, 598 (2012). The veteran argued that federal law conflicted with, and, thus, preempted, state statutes purporting to grant state courts jurisdiction over veterans' disability benefits. Rose, 481 U.S. at 625; see Brownell, 163 N.H. at 598.

The federal statutes upon which the veteran primarily relied were 38 U.S.C. § 3101(a), 42 U.S.C. § 659(a), and 42 U.S.C. § 662(f)(2). See Rose, 481 U.S. at 630-35. At the time, 38 U.S.C. § 3101(a) provided, "[P]ayments of benefits due or to become due under any law administered by the Veterans' Administration made to, or on account of, a beneficiary shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Rose, 481 U.S. at 630 (quotation and ellipses omitted). Section 3101(a) "exists currently in similar form in" 38 U.S.C. § 5301(a)(1) (2012). Holmes v. Dept. of Human Resources, 279 So. 3d 572, 576 (Ala. Civ. App. 2018).

In Rose, the veteran argued that, pursuant to 38 U.S.C. § 3101(a), only the Federal Veterans' Administration could order him to pay child support and that the state court lacked jurisdiction over his federal veterans' disability benefits. Rose, 481 U.S. at 623; see Alwan, 830 S.E.2d at 49. In rejecting that argument, the Court explained that this statute serves two purposes: (1) "to avoid the possibility of the Veterans' Administration being placed in the position of a collection agency"; and (2) "to prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." Rose, 481 U.S. at 630 (quotations and ellipsis omitted). The Court held that the state's assertion of its contempt power did not frustrate the first purpose because the Federal Veterans' Administration was neither a party to the contempt proceedings nor required to pay the veteran's disability benefits directly to his ex-wife. Holmes, 279 So. 3d at 576; see Rose, 481 U.S. at 630. The second purpose was not frustrated because veterans' disability benefits "are not provided to support [the veteran]

3

alone." Rose, 481 U.S. at 630. Rather, the Court ruled, Congress intended those benefits "to provide reasonable and adequate compensation for disabled veterans and their families." Id. (quotation omitted); see Alwan, 830 S.E.2d at 50.

Because federal veterans' disability benefits "are intended to support not only the veteran, but the veteran's family," the Court recognized an exception in the context of child support to the statutory prohibition against attachment, levy, or seizure of a veteran's benefits. Rose, 481 U.S. at 634; see Brownell, 163 N.H. at 598. The Court ruled, therefore, that a veteran's disability benefits are not protected from seizure when the veteran invokes Section 3101(a) "to avoid an otherwise valid order of child support." Rose, 481 U.S. at 634; see Brownell, 163 N.H. at 598.

The veteran also relied upon 42 U.S.C. § 659(a), which, at the time, provided:

> [M]oneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support.

Rose, 481 U.S. at 634 (quotation and ellipses omitted). 42 U.S.C. § 662(f)(2) specifically excluded veterans' disability benefits from the statutory definition of an entitlement "based upon remuneration for employment." Rose, 481 U.S. at 634-35 (quotation omitted). The current version of 42 U.S.C. § 659(a) is substantially the same as the version at issue in Rose. Compare Rose, 481 U.S. at 634-35 (quoting version of the statute then in effect), with 42 U.S.C. § 659(a) (2012). Currently, veterans' disability benefits are deemed to be remuneration from employment only under certain circumstances. See 42 U.S.C. § 659(h)(1)(A)(ii)(V), (h)(1)(B)(iii) (2012).

In Rose, the veteran argued that the exclusion of veterans' disability benefits from the statutory definition of remuneration for employment "embodie[d] Congress' intent that veterans' disability benefits not be subject to any legal process aimed at diverting funds for child support, including a state-court contempt proceeding." Rose, 481 U.S. at 635. In rejecting that argument, the Court explained that 42 U.S.C. § 659(a) "was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies." Id. Observing that "[w]aivers of sovereign immunity are strictly construed," the Court found "no indication in the statute that a state-court order of contempt issued against an individual is

4

precluded where the individual's income happens to be composed of veterans' disability benefits." Id. (emphasis omitted). "Thus," the Court reasoned, "while it may be true that [veterans' disability benefits] are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support." Id.

Numerous state courts, relying upon Rose, have determined that federal law does not preclude a state court from treating a veteran's disability benefits as income for child support purposes. See Goldman v. Goldman, 197 So. 3d 487, 493-94 (Ala. Civ. App. 2015); Loving v. Sterling, 680 A.2d 1030 (D.C. 1996); Casey v. Casey, 948 N.E.2d 892, 901-02 (Mass. App. Ct. 2011) (deciding that "[i]t was error . . . for the husband to fail to include the [veterans'] disability payment amount in his financial statement listing his income" because "State courts are not precluded from considering these benefits as a portion of the husband's income for purposes of child support"); Nieves v. Iacono, 77 N.Y.S.3d 493, 493-94 (App. Div. 2018) (father's veterans' disability benefits are income; federal statute exempting veterans' benefits from claims in general did not apply to child support obligations); Alwan, 830 S.E.2d at 51 (ruling that the trial court "did not err in . . . calculat[ing] father's gross income based on the income he received from all sources, including his [federal] veterans' disability benefits").

In Brownell, we relied upon "the logic of Rose" to hold that federal law does not preclude a state court from including veterans' disability benefits as income for alimony purposes. Brownell, 163 N.H. at 598-99 (quotation omitted). We did not then have occasion to apply Rose to child support calculations. We now join the courts that have applied Rose and hold that the trial court in this case did not err by including Husband's veterans' disability benefits as income for the purposes of calculating child support.

In arguing for a contrary result, Husband asserts that Rose is not dispositive because it "was wrongly decided." However, "[w]hen interpreting federal law, . . . we are bound by the United States Supreme Court's current explication of it." State v. Melvin, 150 N.H. 134, 140 (2003); see Marmet Health Care Center, Inc. v. Brown, 565 U.S. 530, 531 (2012) (per curiam) ("When this Court has fulfilled its duty to interpret federal law, a state court may not contradict or fail to implement the rule so established.").

To the extent that Husband contends that Rose has been "overruled" by subsequent amendments to the pertinent federal statutes, he is mistaken. The statutes upon which Husband relies "to counter the viability and reach of the Rose decision . . . are essentially the same statutes that were rejected as controlling in Rose." Alwan, 830 S.E.2d at 50; see Iannucci v. Jones, No. 345886, 2019 WL 6977116, at *4 (Mich. Ct. App. Dec. 19, 2019) (reviewing the current versions of 42 U.S.C. § 659 and 38 U.S.C. § 5301(a)(1) and deciding

that they "do not prevent state courts from considering veterans' disability benefits as income in calculating child support and . . . do no[t] preempt state law in this field").

Husband is also mistaken to the extent that he argues that Howell v. Howell, 137 S. Ct. 1400 (2017), abrogated Rose. "Howell addressed the treatment and division of military benefits as 'property' in divorce, not as income used to support a veteran's dependents." Alwan, 830 S.E.2d at 51; see Howell, 137 S. Ct. at 1403-06. "Howell did not address the calculation of a veteran's income for child support purposes." Alwan, 830 S.E.2d at 51; see Lesh v. Lesh, 809 S.E.2d 890, 899 (N.C. Ct. App. 2018) ("Nothing in Howell alters the holding in Rose that military disability benefits are not required to be excluded from the definition of income for the purposes of calculating the resources a party can draw upon to fulfill child support obligations.").

Husband's reliance upon In re Marriage of Cassinelli, 229 Cal. Rptr. 3d 801 (Ct. App. 2018), is equally misplaced. That case concerned a divorced spouse's share of her ex-husband's military retired pay. Cassinelli, 229 Cal. Rptr. 3d at 806-08. It did not concern the inclusion of veterans' disability benefits as income for child support purposes. Moreover, in Cassinelli, the court specifically agreed with other courts that "a court may include [veterans'] disability benefits as a source of income to be considered in awarding spousal support." Id. at 807 (quotation omitted).

Husband asserts that by incorrectly calculating his income for child support purposes, the trial court infringed upon his constitutionally-protected property right to veterans' disability benefits. This argument is insufficiently developed for our review. "Judicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration." Appeal of Omega Entm't, 156 N.H. 282, 287 (2007).

Husband next contends that "the NH Legislation branch, and the Department of Health and Human Services, knew they were out of compliance with federal mandates when the state attempted to submit HB-652-FN in 2017," a bill that, when it was introduced, sought to amend the statutory definition of gross income for child support purposes to include veterans' benefits only "to the extent permitted by federal law and to the extent such benefits are intended to support not only the veteran but also the veteran's family." H.B. 652-FN, 2017 Leg., Reg. Sess. (N.H. 2017) (bolding omitted). The fiscal note accompanying the bill stated, in pertinent part:

> The Department of Health and Human Services states the definition of gross income in this bill appears to conflict with 45 CFR 302.56(c)(1) requiring state child support guidelines take into

consideration all earnings and income of the noncustodial parent. If this bill results in state law being out of compliance with the federal mandate, the state may be subject to various federal sanctions that could include the total loss of federal funding of the child support program, loss of federal child support performance measures incentive funds, and loss of five percent of the State's TANF block grant.

Id. The version of the bill that the legislature eventually passed and the Governor signed into law did not amend the statutory definition of gross income. See Laws 2017, ch. 169.

As the above discussion demonstrates, the broad statutory definition of "gross income" for child support purposes, which includes veterans' benefits and disability benefits, is consistent with federal law. Moreover, neither the intent of the New Hampshire Legislature nor of the New Hampshire Department of Health and Human Services is relevant to the federal question of preemption. Thus, for all of the reasons stated above, we hold that federal law did not preclude the trial court from including Husband's federal veterans' disability benefits as income for child support purposes.

We have reviewed Husband's remaining arguments and conclude that they do not warrant extended discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). In his remaining arguments, Husband challenges several of the trial court's discretionary decisions, such as its decisions to: (1) hold a final hearing even though Wife had not answered all of Husband's interrogatories; (2) not find that Wife is voluntarily underemployed; (3) not hold Wife in contempt; (4) not specifically rule upon Husband's motion in limine to prevent Wife from testifying about finances; (6) find Wife's testimony credible; (7) not "remove the clause of the parties mutually releasing one another" (footnote omitted); (8) require Husband to pay for private kindergarten; (9) decline to follow the recommendation of the guardian ad litem regarding the child's legal residence for school; (10) divide the current cash value of an insurance policy on Wife's life unequally; and (11) not refer the case to the complex case docket.

The trial court has broad discretion in fashioning a final divorce decree. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014). Its discretion necessarily encompasses decisions concerning property distribution, child support, and parenting rights and responsibilities. See id.; see also In the Matter of Conant & Faller, 167 N.H. 577, 582 (2015). The trial court's discretion also extends to managing the proceedings before it, including resolving discovery disputes. See In the Matter of Kempton & Kempton, 167 N.H. 785, 792 (2015); see also In the Matter of Jones and Jones, 146 N.H. 119, 121 (2001).

7

We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion.  Spenard, 167 N.H. at 3; Conant & Faller, 167 N.H. at 582; Kempton, 167 N.H. at 793; see Jones, 146 N.H. at 121.  This standard of review means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made.  In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011).  We defer to the trial court's judgment in matters of conflicting testimony and evaluating the credibility of witnesses.  In the Matter of Aube & Aube, 158 N.H. 459, 465 (2009).  As the trier of fact, the trial court could accept or reject, in whole or in part, the testimony of any witness or party, and was not required to believe even uncontroverted evidence.  Brent v. Paquette, 132 N.H. 415, 418 (1989).  We also defer to the trial court's judgment as to the weight to be accorded evidence, including the recommendations of a guardian ad litem.  In the Matter of Heinrich & Curotto, 160 N.H. 650, 657-58 (2010).  If the trial court's findings could reasonably have been made on the evidence presented at trial, they will stand.  Spenard, 167 N.H. at 3.

"Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence."  Cook v. Sullivan, 149 N.H. 774, 780 (2003).  We will not substitute our judgment for that of the trial court.  See Brent, 132 N.H. at 419.  Nor will we reweigh the equities.  In the Matter of Heinrich & Heinrich, 164 N.H. 357, 365 (2012).

As the appealing party, Husband has the burden of demonstrating reversible error.  Gallo v. Traina, 166 N.H. 737, 740 (2014).  Based upon our review of the trial court's discretionary decisions, Husband's challenges to them, the relevant law, and the record submitted on appeal, we conclude that Husband has not demonstrated reversible error with respect to those decisions.  See id.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

8