NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0442


CARRIE HENDRICK & a.

v.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES

Argued:  January 13, 2016
Opinion Issued:  August 2, 2016


New Hampshire Legal Assistance, of Concord and Portsmouth (Ruth D. Heintz and Kay E. Drought on the brief, and Ms. Heintz orally), for the plaintiffs.

Joseph A. Foster, attorney general (MaryBeth L. Misluk, attorney, and Lynmarie Cusack, assistant attorney general, on the brief, and Ms. Misluk orally), for the defendant.

United States Department of Justice, of Washington, D.C. (Jeffrey E. Sandberg, attorney, on the brief), and United States Attorney's Office, of Concord (T. David Plourde, chief, civil division, on the brief), as amicus curiae.

Disability Rights Center – NH, of Concord (C. Adrienne Mallinson on the brief), for the Disability Rights Center – NH, the New Hampshire Association of Special Education Administrators, and the National Disability Rights Network, as amici curiae.

DALIANIS, C.J.  The plaintiffs, Carrie Hendrick and Jamie Birmingham, appeal an order of the Superior Court (Smukler, J.) granting summary judgment to the defendant, the New Hampshire Department of Health and Human Services (DHHS).  We reverse and remand.

## I.  Legal Framework

The issue before us is the constitutionality of New Hampshire Administrative Rules, He-W 654.04(c).  The rule requires DHHS to include a child's federal Supplemental Security Income (SSI) in the calculation of a family's eligibility for benefits under the federal Temporary Assistance for Needy Families program (TANF), as administered by the State's Financial Assistance to Needy Families program (FANF).  We hold that the rule violates the Supremacy Clause of the United States Constitution.  See U.S. CONST. art. VI, cl. 2.  For context, we provide a brief overview of the applicable federal and state statutes and regulations.

### A.  Federal Law

#### 1.  SSI

The SSI program, codified as Title XVI of the Social Security Act, is a needs-based federal assistance program that sets a "guaranteed minimum income level" for individuals "who have attained age 65" or who "are blind or disabled."  Sullivan v. Zebley, 493 U.S. 521, 524 (1990) (quotations omitted); see 42 U.S.C. § 1381 (2012).  SSI payments are funded by the federal government and administered by the Social Security Administration (SSA).  See 42 U.S.C. § 1383 (2012 & Supp. II 2014).

For a child to be eligible for SSI payments, the child must be blind or disabled and have limited income and resources.  See 42 U.S.C. § 1382(a)(1) (2012).  A child is "disabled" if he or she has a "physical or mental impairment" that results in "marked and severe functional limitations," and which can be expected either to result in death or to last continuously for at least one year. 42 U.S.C. § 1382c(a)(3)(C)(i) (2012).  The requirement that the child have limited income and resources is met when the child has less than a certain amount in assets, 20 C.F.R. § 416.1205(a), (c) (2015), and "countable income" below the federal financial benefit rate, 20 C.F.R. §§ 416.1110-416.1182 (2015).

2

For SSI beneficiaries who are unable to manage their own payments "due to a mental or physical condition or due to their youth," the beneficiary's payments are directed to a third-party "representative payee." 20 C.F.R. § 416.601(b) (2015); see 42 U.S.C. § 1383(a)(2)(A)(ii)(I) (2012). The statute directs the representative payee to use SSI funds "for the use and benefit" of the child. 42 U.S.C. § 1383(a)(2)(A)(ii)(I). A representative payee who "converts such payment, or any part thereof, to a use other than for the use and benefit of" the child commits "misuse of benefits." 42 U.S.C. § 1383(a)(2)(A)(iv) (2012). A representative payee who commits "misuse of benefits" is subject to a range of civil and criminal penalties. See, e.g., 42 U.S.C. § 1383a(a)(4) (2012) (fine and/or imprisonment of up to 5 years); id. § 1383(a)(2)(H)(i) (2012) (restitution); id. § 1383a(b) (2012) (same).

The statute authorizes the SSA to implement regulations in administering the SSI program, 42 U.S.C. § 405(a) (2012), including prescribing "the meaning of the term 'use and benefit' for purposes" of preventing misuse of benefits, id. § 1383(a)(2)(A)(iv) (2012). The SSA has promulgated "[d]etailed regulations govern[ing] a representative payee's use of [SSI] benefits." Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 376 (2003). A representative payee who receives SSI funds on behalf of a disabled child must "[u]se the benefits received on [the child's] behalf only for [the child's] use and benefit in a manner and for the purposes [the representative payee] determines . . . to be in [the child's] best interests." 20 C.F.R. § 416.635(a) (2015). SSI funds that "are used for the [child's] current maintenance" are considered to "have been used for the use and benefit of the [child]." 20 C.F.R. § 416.640(a) (2015). "Current maintenance includes costs incurred in obtaining food, shelter, clothing, medical care and personal comfort items." Id. In addition, the representative payee must "[e]nsure that [the child is] receiving treatment to the extent considered medically necessary and available for the condition that was the basis for providing benefits if [the child is] under age 18." 20 C.F.R. § 416.635(g) (2015) (citation omitted). Any funds not spent on the child's current maintenance must be "conserved or invested on behalf of the [child]." 20 C.F.R. § 416.645(a) (2015). Representative payees are required to submit an annual accounting to the SSA informing the agency how much of the SSI benefit was spent on the beneficiary's care and support, and how much was saved. 20 C.F.R. § 416.665 (2015).

### 2. TANF

The TANF program, codified as Title IV-A of the Social Security Act, provides federal block-grant funding to states to create public assistance programs that offer, among other things, cash assistance to needy families with children. 42 U.S.C. §§ 601-629m (2012 & Supp. II 2014). Congress enacted TANF in 1996 to replace the Aid to Families with Dependent Children program (AFDC). See Personal Responsibility and Work Opportunity Reconciliation Act

of 1996, Pub. L. No. 104-193, 110 Stat. 2105 (1996). "Unlike AFDC, TANF is not an open-ended entitlement program." Arizona v. Shalala, 121 F. Supp. 2d 40, 45 (D.D.C. 2000).

Under TANF, each participating state designs its own public assistance program. See 42 U.S.C. § 602 (2012). A state TANF program should advance four goals: (1) providing assistance to needy families "so that children may be cared for in their own homes"; (2) ending the dependence of needy parents on government benefits "by promoting job preparation, work, and marriage"; (3) preventing and reducing the number of out-of-wedlock pregnancies; and (4) encouraging "the formation and maintenance of two-parent families." Id. § 601(a)(1)-(4) (2012). A state may use its federal block-grant funds "in any manner that is reasonably calculated to accomplish" those purposes. Id. § 604(a)(1) (2012). States are directed to "set forth objective criteria for the delivery of benefits and the determination of eligibility and for fair and equitable treatment." Id. § 602(a)(1)(B)(iii) (2012).

### B. New Hampshire Law – FANF

New Hampshire uses its federal TANF block grant to operate several public assistance programs, including a program to provide cash assistance to families with dependent children, through the State's FANF program. See RSA 167:77-:93 (2014 & Supp. 2015); N.H. Admin. Rules, He-W 601.04(g).

To determine eligibility for FANF assistance, DHHS first determines the "assistance group," which is the group of individuals who live together and who are considered as a unit in making FANF eligibility determinations. See RSA 167:79, II (2014). The statute provides, in pertinent part:

> The following persons shall be included in the assistance group, unless such person receives foster care or adoption assistance, if living in the same household or temporarily absent from the household: any dependent child and all minor blood-related, step, or adoptive brothers and sisters, and all natural, step, or adoptive parents of such children, including cohabitating adults who share a minor child. In the case of a minor parent, the assistance unit may also include all natural, step, or adoptive parents of the minor parent and all minor blood-related, step or adoptive brothers and sisters.

Id. DHHS has issued rules that further define the "[a]ssistance group" as "the individuals living together . . . whose needs, income and/or resources are considered and combined together when determining eligibility or the amount of benefits for financial or medical assistance." N.H. Admin. Rules, He-W 601.01(u).

4

DHHS then calculates the assistance group's available income and resources in order to determine whether the group is eligible for FANF benefits. The statute provides that "[e]ligibility for assistance shall be based in part on the available countable earned and unearned income of the persons in the assistance group." RSA 167:80, I (2014). DHHS is required to include "[a]ll forms of earned and unearned income" of any member of the assistance group, unless that type of income is specifically excluded by statute. RSA 167:80, III; see RSA 167:80, IV. Income that shall be excluded includes, among other things, "Federal, state, and local means-tested assistance other than means-tested assistance that is defined as included by . . . rules adopted [by DHHS]." RSA 167:80, IV(h) (2014).

The case before us is based upon changes in 2012 and 2013 to RSA chapter 167 and its regulations. Prior to its amendment in 2012, RSA 167:79, II expressly excluded persons receiving "state supplemental assistance or supplemental security benefits under Title XVI of the Social Security Act" from the assistance group. See RSA 167:79, II (Supp. 2011). Effective January 2012, RSA chapter 167 was amended to require that SSI recipients be included in the FANF assistance group. See Laws 2011, ch. 272:2.

Effective June 2013, DHHS promulgated Rule He-W 654.04(c) providing that "[p]ursuant to RSA 167:80, IV(h), supplemental security income . . . shall be counted as unearned income for FANF . . . when computing income pursuant to He-W 652.02 and He-W 654.02." N.H. Admin. Rules, He-W 654.04(c). Pursuant to this rule, DHHS includes the SSI income of SSI recipients as countable income for purposes of determining the amount, if any, of FANF assistance for a FANF assistance group.

## II. Factual and Procedural Background

The parties stipulated to the following facts. Hendrick is the mother of six children, two of whom receive SSI benefits. Hendrick is the "representative payee" for those two children's SSI benefits. In February 2014, the Hendrick assistance group received a monthly FANF benefit of $847.80, in addition to the SSI benefits received by the two children. Beginning in March 2014, DHHS included Hendrick and her six children in the FANF assistance group, and also included the two children's monthly, recurring SSI benefits of $654.00 as unearned income. DHHS informed Hendrick by notice dated February 25, 2014, that beginning March 15, 2014, her FANF cash assistance would be reduced to a monthly payment of $259.20. Thereafter, in April 2014, DHHS determined that Hendrick was no longer eligible for FANF assistance because her assistance group's total income exceeded the income limit. In making this determination, DHHS included the two children's recurring SSI benefits as countable unearned income. Hendrick, therefore, no longer receives FANF assistance.

Birmingham is the mother of three children, one of whom receives SSI benefits. Birmingham is the "representative payee" for her child's SSI benefits. The Birmingham family applied for FANF assistance in July 2014. In determining Birmingham's eligibility for FANF assistance, DHHS included her child's monthly, recurring SSI benefit as countable unearned income in its FANF benefit calculation. Beginning August 15, 2014, the Birmingham assistance group received monthly FANF cash assistance of $17.00.

The plaintiffs brought this lawsuit on behalf of themselves and their children, seeking a declaratory judgment that DHHS's "inclusion of children's SSI in FANF assistance group income is unlawful and void" pursuant to applicable federal law. In addition, the plaintiffs sought a declaratory judgment that Rule He-W 654.04 "is invalid because it impairs [their] legal rights." The plaintiffs sought a permanent injunction enjoining DHHS from including children's SSI in FANF assistance group income and an award of attorney's fees "because this litigation will result in a substantial benefit to the public." We note that the plaintiffs "seek invalidation of [Rule] He-W 654.04(c) only with respect to its inclusion of children's SSI as income to the [FANF] assistance group." The plaintiffs do not seek to invalidate Rule He-W 654.04(c) insofar as it counts an adult's SSI as income to the FANF assistance group.

The parties cross-moved for summary judgment. The plaintiffs argued that under controlling federal law, children's SSI must be used by a representative payee only for the benefit of the child with disabilities, not for the benefit of the FANF assistance group, and that state law to the contrary is invalid pursuant to the Supremacy Clause of the United States Constitution. See U.S. CONST. art. VI, cl. 2. DHHS asserted that the inclusion of the children's SSI in calculating FANF eligibility does not interfere with the federal requirement that SSI benefits be expended for the use and benefit of the beneficiary. The trial court concluded that DHHS's inclusion of SSI benefits in the calculation of FANF eligibility is lawful. The court reasoned that "[n]othing in the statute or corresponding regulations deprive[s] the representative payee of the ability to use the SSI funds for the beneficiary's current maintenance" and that the representative payee may use SSI for the beneficiary's benefit "even if that income is included in [DHHS's] calculation of FANF benefits." Accordingly the trial court denied the plaintiffs' motion for summary judgment and granted the defendant's cross-motion.

III. Standards of Review

We review de novo the trial court's application of the law to the facts in its summary judgment ruling. EnergyNorth Natural Gas v. City of Concord, 164 N.H. 14, 15 (2012). We consider all of the evidence presented in the record, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party. Id. at 15-16. If our review of that evidence discloses

6

no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. at 16.

The issue before us raises a question of federal preemption; preemption is essentially a matter of statutory interpretation and construction. Id. Statutory interpretation is a question of law that we review de novo. Id. We interpret federal law in accordance with federal policy and precedent. See Dube v. N.H. Dep't of Health & Human Servs., 166 N.H. 358, 364 (2014). When interpreting a statute, we begin with the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. When the language of the statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what Congress might have said, nor add words that it did not see fit to include. Id. at 364-65. We interpret statutes in the context of the overall statutory scheme and not in isolation. EnergyNorth, 164 N.H. at 16.

IV. Analysis

On appeal, the plaintiffs argue that Rule He-W 654.04(c) is invalid because under federal law a representative payee must use a child's SSI only for the child with disabilities, not for the FANF assistance group. They assert that DHHS's "policy of treating children's SSI as FANF assistance group income violates the Social Security Act's purposes of: 1) ensuring a minimal level of federal support for children with serious disabilities; and 2) mandating that the representative payee spend the child's SSI benefits only for the use and benefit, and in the best interests, of the SSI recipient child." (Citation omitted.) DHHS argues that the inclusion of SSI benefits in FANF determinations does not interfere with the federal requirement that SSI benefits be expended for "the use and benefit" of the beneficiary. (Bolding and capitalization omitted.) It asserts that the requirement that income be used for the benefit of a specific child does not preclude its use for common expenses or its inclusion in a welfare benefit calculation.

After briefing and oral argument, we invited the Solicitor General of the United States to file an amicus brief addressing two questions: (1) whether it is unlawful for the State to terminate, reduce, or deny a household's TANF because a child with disabilities in the household receives SSI benefits; and (2) whether inclusion of the child's SSI as TANF assistance group income violates the federal Social Security Act and regulations. The Solicitor General submitted a brief on behalf of the United States asserting that "Rule He-W 654.04(c) conflicts with the federal Social Security Act and implementing regulations." The Solicitor General argues that federal law requires representative payees to use SSI funds solely for the "use and benefit" of the beneficiary, and that "by deeming SSI benefits available to the entire

7

household, Rule He-W 654.04(c) conflicts with federal requirements" and is therefore preempted. (Bolding and capitalization omitted.)

The federal preemption doctrine is based upon the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2. See Arizona v. United States, 132 S. Ct. 2492, 2500 (2012). Article VI provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "There can be no dispute that the Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress." Rose v. Arkansas State Police, 479 U.S. 1, 3 (1986) (per curium); see Mutual Pharmaceutical Co., Inc. v. Bartlett, 133 S. Ct. 2466, 2473 (2013) (state laws that conflict with federal law are without effect). In addition, "[t]he statutorily authorized regulations of a [federal] agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." City of New York v. FCC, 486 U.S. 57, 64 (1988); see Koor Communication v. City of Lebanon, 148 N.H. 618, 621 (2002) ("Federal regulations have the same preemptive force as federal statutes." (quotation omitted)).

"Pre-emption may be either expressed or implied." Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 98 (1992) (plurality opinion). "Even without an express provision for preemption, . . . state law must yield to a congressional Act in at least two circumstances." Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 (2000). "When Congress intends federal law to occupy the field, state law in that area is preempted." Id. (quotation omitted). "And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." Id. "An actual conflict exists when 'it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress.'" Wenners v. Great State Beverages, 140 N.H. 100, 104 (1995) (quoting English v. General Electric Co., 496 U.S. 72, 79 (1990)); see Koor Communication, 148 N.H. at 621. "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." Crosby, 530 U.S. at 373.

Relying primarily upon Sneed v. Saenz, 16 Cal. Rptr. 3d 563, 577-80 (Ct. App. 2004), a case interpreting Title II of the Social Security Act, DHHS argues that the requirement that SSI income be used for the benefit of a specific child does not preclude its use for common expenses or its inclusion in a state welfare benefit calculation. According to DHHS, Sneed supports a ruling that Rule He-W 654.04(c) "does not violate the 'use and benefit' provision of representative payee law because it only requires SSI to be included in calculating FANF benefits, not to satisfy the needs of others in the household."

Sneed, however, is not controlling in these circumstances. Because we determine that the federal regulations governing Social Security Disability Income (SSDI) benefits under Title II of the Social Security Act are substantively different from the federal regulations governing SSI benefits under Title XVI of the Social Security Act, we reject DHHS's underlying premise that the "use and benefit" provisions with regard to SSDI and SSI "mirror one another." See In the Matter of Lister & Lister, 162 N.H. 48, 51 (2011) (recognizing that SSDI benefits and SSI benefits have different purposes).

Under Title II, SSDI "benefits are paid on behalf of a wage earner who pays into the Social Security system." Sneed, 16 Cal. Rptr. 3d at 577; see 42 U.S.C. §§ 401-499 (2012 & Supp. II 2014). "[SSDI] payments represent money which an employee has earned during his or her employment and also that which his or her employer has paid for the employee's benefit into a common trust fund under the Social Security Act." Burns v. Edwards, 842 A.2d 186, 191 (N.J. Super. Ct. App. Div. 2004); see 42 U.S.C. § 401(b) (2012). "[SSDI] payments are for the purpose of replacing income lost because of the employee's inability to work upon becoming disabled." Burns, 842 A.2d at 191 (quotation omitted). "Stated another way, [SSDI] payments are a substitute for earned income and are thereby non-means-tested benefits." Id.

Regulations promulgated by SSA that govern SSDI benefits provide that a representative payee has a responsibility to "[u]se the benefits received [on the beneficiary's] behalf only for [the beneficiary's] use and benefit in a manner and for the purposes [the representative payee] determines . . . to be in [the beneficiary's] best interests." 20 C.F.R. § 404.2035(a) (2015). The regulations further specify that SSA "will consider that payments [it] certif[ies] to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040(a)(1) (2015). Notably, the regulations provide an exception to the current maintenance provision, expressly stating that "[n]otwithstanding the provisions of paragraph (a)(1) of this section, if a beneficiary is a member of a [TANF] assistance unit, we do not consider it inappropriate for a representative payee to make the benefit payments available to the [TANF] assistance unit." 20 C.F.R. § 404.2040(a)(2) (2015). Thus, federal SSDI regulations specifically provide that if a beneficiary is a member of a TANF assistance unit, a representative payee may make the SSDI benefit payments available to the entire TANF assistance unit.

In contrast to SSDI payments, "SSI benefits are not a substitute for lost income due to disability; rather, they are a supplement to the recipient's income." Burns, 842 A.2d at 191. An SSI recipient's benefits "are the amount necessary to raise the recipient's income to the prescribed minimum level," whereas "the amount of a [SSDI] recipient's benefits is keyed to how much that person has paid into the Social Security system over time." Tennessee DHS ex

9

rel. Young v. Young, 802 S.W.2d 594, 597 (Tenn. 1990). The SSI program is intended "'to assist those who cannot work because of age, blindness, or disability' by 'setting a Federal guaranteed minimum income level for aged, blind, and disabled persons.' The SSI program provides a subsistence allowance, under federal standards, to the Nation's needy, aged, blind, and disabled." Lyon v. Bowen, 802 F.2d 794, 796 (5th Cir. 1986) (quoting Schweiker v. Wilson, 450 U.S. 221, 223 (1981)) (brackets and ellipses omitted).

Although there is some facial similarity between the "use and benefit" provisions in the regulations for Title II (SSDI) and those for Title XVI (SSI), the regulations expressly allow SSDI benefits to be used to support the beneficiary's assistance group, and the SSI regulations do not. Rather, under the plain language of the regulations, a child's SSI benefits may be spent only on that child's current maintenance, i.e., the child's food, shelter, clothing, medical care and personal comfort items, unlike SSDI benefits, which may be used for the current maintenance of persons in the assistance unit other than, or in addition to, the SSDI beneficiary. Accordingly, we disagree with DHHS that there is a uniform rule in the various welfare benefit programs whereby "a state may treat an entire family as the relevant unit for public assistance, and that, in determining the amount of assistance for the family, a state may take into account income received by any members of the family." To the extent DHHS relies upon Bowen v. Gilliard, 483 U.S. 587 (1987), to support this proposition, we are not persuaded.

Furthermore, Congress intended the SSI program to provide an additional source of federal funds, separate from funds available to needy families with children under the TANF program, to provide disabled children with the minimum amount necessary to satisfy their basic needs. See Kyle v. Kyle, 582 N.E.2d 842, 846 (Ind. Ct. App. 1991) (concluding that SSI benefits received by a disabled child "are intended to supplement other income, not substitute for it" because "Congress determined that disabled children generally have greater needs than nondisabled children"); see also State, ex rel. Child Support Enfor. v. Kost, 964 S.W.2d 528, 531 (Mo. Ct. App. 1998) ("SSI benefits are granted to provide parents of disabled children additional funds to offset the additional financial burden incumbent with children who are disabled").

Indeed, as to the calculation of a disabled child's SSI benefits, the regulations specifically exclude any TANF payments the child's parent receives "and any income which was counted or excluded in figuring the amount of that payment" and "[a]ny of the income of [the child's] . . . parent that is used . . . to determine the amount of [the TANF] program's benefit to someone else." 20 C.F.R. §§ 416.1161(a)(2), (3) (2015). In addition, if the child lives in a "public assistance household in which every member receives some kind of public income-maintenance payments" including TANF, SSA finds that the child "[is]

10

not receiving in-kind support and maintenance from members of the household."  20 C.F.R. § 416.1142(a)(1), (b) (2015).

The only other jurisdictions to address this issue have reached similar conclusions.  In V.R. v. Ohl, No. 3:98-CV-1176 (S.D. W. Va. Feb. 3, 1999), the court concluded that a policy instituted under West Virginia's TANF program that counted a child's SSI payments as household income in determining eligibility for TANF benefits "presents an obstacle to fulfillment of Congress's requirement that representative payees use SSI benefits only for the use and benefit of the child beneficiary."  Ohl, slip op. at 22.  The court noted that in replacing AFDC with TANF, "Congress did not repeal any of the statutory provisions that make it clear that SSI benefits paid to representative payees are to be used only for the benefit of the beneficiary nor explicitly alter the fundamental purpose behind the SSI program – to assist families in meeting additional disability-related costs."  Id. at n.17 (emphasis added).  Likewise, in Eneliko v. Dreyfus, No. C11-0312JLR (W.D. Wash. Feb. 28, 2011), the court determined that a rule proposed by the Washington State Department of Health and Human Services that would deem the SSI income of disabled children available to non-disabled household members for purposes of deciding the family's eligibility under the state's TANF program was "in direct conflict with or obstruct[ed] the purposes of federal law."  Eneliko, slip op. at 5.

Furthermore, according to the Solicitor General, "[o]f the 51 jurisdictions (all States plus the District of Columbia) that participate in TANF, only two—New Hampshire and Wisconsin—count a disabled child's SSI benefits as if they were income available to the entire TANF assistance group."  See Erika Huber et al., The Urban Institute, Welfare Rules Databook: State TANF Policies as of July 2014, Final Report 66-67 (Aug. 2015), http://wrd.urban.org/wrd/data/databooks/2014%20Welfare%20Rules%20Da tabook%20(FINAL).pdf.

Although several states count SSI recipients as members of the assistance group for TANF purposes, those states do not count such recipients' SSI funds as income available to the assistance group.  Id. at nn.3-4.

We agree with the Solicitor General that the Supremacy Clause does not permit the State to redirect federal benefits as required by Rule He-W 654.04(c).  The rule, by counting a disabled child's SSI benefits as income available to the child's "assistance group," treats the child's benefits as a source of income for the entire household.  The rule, thereby, reduces a household's TANF benefit by one dollar for every dollar in SSI that is received by a disabled child in the household.  Because the rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," we hold that Rule He-W 654.04(c) is preempted by federal law and, thus, invalid to the extent that it requires inclusion of children's SSI as income to the TANF assistance group for the purpose of determining eligibility for TANF

11

benefits.  <u>Arizona</u>, 132 S. Ct. at 2501 (quotation omitted).  Accordingly, we reverse and remand for further proceedings consistent with this opinion, including a review of the plaintiffs' pending request for attorney's fees.

<u>Reversed and remanded</u>.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.