NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Compensation Appeals Board
No. 2019-0685

APPEAL OF ANDREW PANAGGIO
(New Hampshire Compensation Appeals Board)

Argued: November 10, 2020
Opinion Issued: March 2, 2021

Shaheen & Gordon, P.A., of Manchester (Jared P. O'Connor on the brief and orally), for the petitioner.

Tentindo, Kendall, Canniff & Keefe LLP, of Boston, Massachusetts (Robert S. Martin on the brief and orally), for the respondent.

Robinson & Cole LLP, of Providence, Rhode Island (Dana M. Horton on the brief), for American Property Casualty Insurance Association, as amicus curiae.

HICKS, J.  The petitioner, Andrew Panaggio, appeals the determination of the New Hampshire Compensation Appeals Board (Board) that the respondent, CNA Insurance Company (the insurer), cannot be ordered to reimburse him for his purchase of medical marijuana because such reimbursement would constitute aiding and abetting his commission of a federal crime under the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq. (2018).  We reverse and remand.

## I. Background

This case returns to us following our decision in <u>Appeal of Panaggio</u>, 172 N.H. 13 (2019). We repeat the facts set forth in <u>Panaggio</u> as necessary to decide the instant appeal.

Panaggio suffers from ongoing pain as a result of a 1991 work-related injury to his lower back. <u>Panaggio</u>, 172 N.H. at 14. He is a qualified patient in the State's therapeutic cannabis program and has a New Hampshire cannabis registry identification card. <u>Id</u>.; <u>see</u> RSA 126-X:4 (Supp. 2020). The insurer declined to reimburse him for the purchase of medical marijuana on the ground that it was not reasonable or medically necessary. <u>See</u> <u>Panaggio</u>, 172 N.H. at 14. When Panaggio appealed the insurer's denial to the New Hampshire Department of Labor, a hearing officer agreed with the insurer. <u>Id</u>. Panaggio appealed the hearing officer's decision to the Board, which unanimously found that his use of medical marijuana is reasonable and medically necessary. <u>Id</u>. Nonetheless, the Board upheld the insurer's refusal to reimburse Panaggio, concluding that "the carrier is not able to provide medical marijuana because such reimbursement is not legal under state or federal law." <u>Id</u>. (quotations omitted).

Panaggio appealed the Board's decision to this court. We concluded that the insurer's reimbursement for the purchase of medical marijuana would not violate state law. <u>See</u> <u>id</u>. at 16-17. However, because the Board "did not cite any legal authority for its conclusion, much less identify a federal statute that, under the circumstances of this case, would expose the insurance carrier to criminal prosecution," we vacated its determination that the reimbursement would violate federal law. <u>Id</u>. at 19 (emphasis omitted). We remanded so that the Board could "articulate the law that supports [its] legal conclusion" and "provide an adequate explanation of its reasoning regarding federal law." <u>Id</u>.

On remand, the Board unanimously found that were the insurer "to pay for Mr. Panaggio's prescription medical marijuana it would commit a federal crime . . . by aiding and abetting Mr. Panaggio's illicit purchase and possession." Accordingly, the Board ruled that, under federal preemption principles as articulated by the Maine Supreme Judicial Court in <u>Bourgoin v. Twin Rivers Paper Co.</u>, 187 A.3d 10, 13-22 (Me. 2018), the insurer could not be ordered to reimburse Panaggio for his purchase of medical marijuana. This appeal followed.

## II. Analysis

### A. Standards of Review

We will not disturb the Board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or

2

unreasonable.  Panaggio, 172 N.H. at 15; see RSA 541:13 (2007).  The appealing party, here Panaggio, has the burden of demonstrating that the Board's decision was erroneous.  Panaggio, 172 N.H. at 15.  All findings of the Board upon questions of fact properly before it are deemed to be prima facie lawful and reasonable.  Id.; see RSA 541:13.  Thus, we review the Board's factual findings deferentially and its statutory interpretation de novo.  Panaggio, 172 N.H. at 15.

The issue before us raises a question of federal preemption, which is essentially a matter of statutory interpretation and construction.  Hendrick v. N.H. Dep't of Health & Human Servs., 169 N.H. 252, 259 (2016).  When interpreting a statute, we begin with the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret federal law in accordance with federal policy and precedent.  Id.

### B.  Federal Preemption Principles

The federal preemption doctrine is based upon the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2.  In the Matter of Braunstein & Braunstein 173 N.H. 38, 41 (2020), cert. denied, No. 20-267, 2020 WL 6551782 (U.S. Nov. 9, 2020).  Article VI provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.

"Two basic principles guide all preemption analyses."  Erwin Chemerinsky, Jolene Forman, Allen Hopper, & Sam Kamin, Cooperative Federalism and Marijuana Regulation, 62 UCLA L. Rev. 74, 104 (2015).  "First, the purpose of Congress is the ultimate touchstone in every pre-emption case."  Wyeth v. Levine, 555 U.S. 555, 565 (2009) (quotation omitted).  Second, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (quotations, ellipsis, and citation omitted).

Broadly speaking, there are three different types of federal preemption: "express," "field," and "conflict."  See Murphy v. National Collegiate Athletic, 138 S. Ct. 1461, 1480 (2018).  Express preemption occurs when Congress "preempt[s] state authority by so stating in express terms."  Pacific Gas & Elec. Co. v. Energy Resources Comm'n, 461 U.S. 190, 203 (1983).  "Field preemption occurs when federal law occupies a 'field' of regulation so comprehensively that it has left no room for supplementary state legislation."  Murphy, 138 S. Ct. at 1480 (quotation omitted).  "Conflict preemption" may occur either when "it is

3

impossible for a private party to comply with both state and federal requirements," English v. General Electric Co., 496 U.S. 72, 79 (1990), or when compliance with both state and federal laws is possible, Sikkelee v. Precision Airmotive Corp., 907 F.3d 701, 709 (3d Cir. 2018), but state law "stands as an impermissible obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Virginia Uranium, Inc. v. Warren, 139 S. Ct. 1894, 1907 (2019) (plurality opinion) (quotation omitted).

"[T]hese categories are not rigidly distinct." Id. at 1901 (plurality opinion) (quotation omitted). However, "at least one feature unites them: Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law; a litigant must point specifically to a constitutional text or a federal statute that does the displacing or conflicts with state law." Id. (plurality opinion) (quotation omitted).

### C. Preemptive Reach of the CSA

Although it is an issue of first impression for this court, other courts have considered whether the CSA preempts a state order requiring reimbursement of an employee's purchase of medical marijuana. The results are mixed. Compare Bourgoin, 187 A.3d at 12 (concluding that "where an employer is subject to an order that would require it to subsidize an employee's acquisition of medical marijuana[,] there is a positive conflict between federal and state law, and as a result, the CSA preempts the [Maine Medical Use of Marijuana Act] as applied"), with Hager v. M & K Const., 225 A.3d 137, 140 (N.J. Super. Ct. App. Div.) (finding no conflict between the CSA and the state medical marijuana law where employer is ordered to reimburse employee for his purchase of medical marijuana), cert. granted, 229 A.3d 20 (N.J. 2020).

Because the CSA contains a saving clause, "our task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." Sprietsma v. Mercury Marine, 537 U.S. 51, 62-63 (2002) (quotation omitted). Section 903 of the CSA provides:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903.

Section 903 "is an express invocation of conflict preemption." Oregon Prescription Drug Monitoring v. U.S. Drug, 860 F.3d 1228, 1236 (9th Cir. 2017). Some courts have ruled that, given the language in Section 903, the CSA preempts a state law only under impossibility preemption, and not under obstacle preemption. See Hager, 225 A.3d at 147 ("Congress has expressed its intent in the plain language of the CSA that it only preempts a state law that requires the performance of an action specifically forbidden by the federal statute."); see also County of San Diego v. San Diego NORML, 81 Cal. Rptr. 3d 461, 479-80 (Ct. App. 2008) ("Because [Section 903] preserves state laws except where there exists such a positive conflict that the two laws cannot consistently stand together, the implied conflict analysis of obstacle preemption appears beyond the intended scope of [Section 903]." (emphases omitted)). Other courts have disagreed. See Oregon Prescription Drug Monitoring, 860 F.3d at 1236; see also In re State Question No. 807, 468 P.3d 383, 390 (Okla. 2020).

For the purposes of this appeal, we assume without deciding that, even if Section 903 refers only to impossibility preemption, we must still analyze whether obstacle preemption applies. See Fourth Corner Credit Union v. Federal Reserve Bank, 861 F.3d 1052, 1075 n.11 (10th Cir. 2017) (opinion of Bacharach, J.); see also Geier v. American Honda Motor Co., 529 U.S. 861, 869 (2000) ("[T]he saving clause . . . does not bar the ordinary working of conflict pre-emption principles."); Geier, 529 U.S. at 873-74 ("The Court has . . . refused to read general 'saving' provisions to tolerate actual conflict both in cases involving impossibility and in 'frustration-of-purpose' cases." (citation omitted)); Wyeth, 555 U.S. at 612 n.4 (Alito, J., dissenting) (describing the saving clause in the federal Food, Drug, and Cosmetic Act, which is worded similarly to the saving clause in the CSA, as "not a traditional 'saving clause,'" and stating that "even if it were, it would not displace [the Court's] conflict pre-emption analysis").

Therefore, we consider whether complying with a Board order requiring the insurer to reimburse Panaggio for his medical marijuana purchase and complying with the CSA is an impossibility and also whether such an order "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as reflected in the CSA. Oregon Prescription Drug Monitoring, 860 F.3d at 1236 (quotation omitted).

### 1. Impossibility Preemption

We first address whether, as the insurer argues and as the Board ruled, the insurer cannot be ordered to reimburse Panaggio for his medical marijuana purchase because such an order would conflict with the CSA under the impossibility preemption doctrine. In other words, we consider whether it is impossible for the insurer to comply with both a Board order to reimburse Panaggio and the CSA.

"Impossibility pre-emption is a demanding defense." Wyeth, 555 U.S. at 573. It requires the party asserting preemption to show that it is "impossible for a private party to comply with both state and federal requirements." Merck Sharp & Dohme Corp. v. Albrecht, 139 S. Ct. 1668, 1672 (2019) (quotations omitted); see Florida Avocado Growers v. Paul, 373 U.S. 132, 142-43 (1963) ("A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility . . . ."). Thus, "[w]hen federal law forbids an action that state law requires, the state law is without effect." Mutual Pharmaceutical Co. v. Bartlett, 570 U.S. 472, 486 (2013) (quotation omitted). However, for impossibility preemption to apply, the conflict must be actual, not hypothetical or speculative. See Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 131 (1978) (explaining that "the possibility that the Maryland statute may require uniformity in some situations in which the [federal statute] would permit localized discrimination" is the "sort of hypothetical conflict" that "is not sufficient to warrant pre-emption"); see also Solorzano v. Superior Court, 13 Cal. Rptr. 2d 161, 169 (Ct. App. 1992) ("[M]ere speculation about a hypothetical conflict is not the stuff of which preemption is made.").

Here, there is no direct conflict between the CSA and a Board order to reimburse Panaggio for his medical marijuana purchase. See Vialpando v. Ben's Automotive Services, 331 P.3d 975, 979 (N.M. Ct. App. 2014). The CSA does not criminalize the act of insurance reimbursement for an employee's purchase of medical marijuana.

Nonetheless, the insurer argues that there is an irreconcilable conflict between the CSA, which forbids the possession and use of marijuana, see 21 U.S.C. § 844(a), and New Hampshire state law, which requires payment of reasonable medical treatment causally related to a work injury, see RSA 281-A:23, I (2010), here, payment for medical marijuana pursuant to a Board order. See Panaggio, 172 N.H. at 16-17; see also RSA 126-X:3, III(a) (2015). Consistent with the Board's determination, the insurer contends that requiring it to reimburse Panaggio for the purchase of medical marijuana "would invoke conduct that violates federal law" because it constitutes aiding and abetting his criminal activity. The insurer argues that, because it is impossible for the insurer to comply with both state and federal law, "federal law prevails and preempts the conflicting state law requirement." We are not persuaded.

Under 18 U.S.C. § 2(a) (2018), "[w]hoever . . . aids, abets, counsels, commands, induces or procures" the commission of a federal crime "is punishable as a principal." "Under § 2, aiding and abetting is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." United States v. Louis, 602 F. App'x 728, 730 (11th Cir. 2015) (quotation omitted). "[T]o convict under a theory of aiding and abetting, the government must prove that: (1) the substantive offense was committed by

someone; (2) the defendant contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." Id.

The federal aiding and abetting statute "derives from (though simplifies) common-law standards for accomplice liability." Rosemond v. United States, 572 U.S. 65, 70 (2014). "As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Id. at 71.

"[T]he canonical formulation" of the state of mind needed for aiding and abetting "is Judge Learned Hand's: To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as something that he wishes to bring about' and 'seek by his action to make it succeed.'" Id. at 76 (quoting Nye & Nissen v. United States, 336 U.S. 613, 619 (1949), which quoted United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938)). "[F]or purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." Id. at 77.[1]

In Rosemond, the United States Supreme Court explained that "[a]n active participant in a drug transaction has the intent needed to aid and abet" an offense of using or carrying a firearm during such a transaction "when he knows that one of his confederates will carry a gun." Id. at 67, 77. By participating actively in the crime with that knowledge, "he has chosen . . . to align himself with the illegal scheme in its entirety — including its use of a firearm. And he has determined . . . to do what he can to make that scheme succeed." Id. at 77-78 (quotation and brackets omitted). For liability to attach, however, the "defendant's knowledge . . . must be advance knowledge . . . , knowledge that enables him to make the relevant legal (and indeed, moral) choice." Id. at 78. The defendant must have "knowledge at a time [he] can do something with it," whether that be to go through with the plan, attempt to alter it, or "opt to walk away." Id. He must have knowledge at a point when he has a "realistic opportunity to quit the crime." Id. "[I]t is deciding . . . to go ahead with his role in the venture that shows his intent to aid an armed offense." Id.

Panaggio contends that "[b]ecause state law gives the insurer no discretion to choose whether to comply with state law once a finding is made that the treatment at issue is reasonable and related to the work injury," an insurer that reimburses a workers' compensation claimant for the purchase of

_____

[1] In Rosemond, the Court distinguished between defendants who actively participate in, and those who "incidentally facilitate," a criminal venture. Rosemond v. United States, 572 U.S. 65, 77 n.8 (2014). The Court explained that "the owner of a gun store who sells a firearm to a criminal, knowing but not caring how the gun will be used," incidentally facilitates the criminal's crime. Id.

7

medical marijuana is not guilty of aiding and abetting because the insurer lacked the requisite mens rea. Panaggio asserts that "[w]hat justifies criminal liability for an aider and abettor is that they elect by their own free will to participate in the prohibited activity." Panaggio reasons that "[b]ecause New Hampshire law unambiguously requires the insurer to pay for the claimant's medically related treatment," an insurer that reimburses a claimant for the purchase of medical marijuana acts without the volition required by the federal aiding and abetting statute.

Panaggio's argument finds support in the dissent in Bourgoin and in the opinion of the New Jersey Superior Court Appellate Division in Hager. The majority in Bourgoin concluded that, by knowingly reimbursing an employee for the purchase of medical marijuana, the employer would act "with knowledge that it was subsidizing [the employee's] purchase of marijuana," and, therefore, be guilty of aiding and abetting. Bourgoin, 187 A.3d at 19. The dissent disagreed, observing that the employer in such a case would only incidentally facilitate the employee's criminal possession of marijuana and that the employer's mere knowledge would be insufficient to establish the requisite intent element of aiding and abetting. Id. at 27 (Jabar, J., dissenting); see Rosemond, 572 U.S. at 77 n.8 (distinguishing between "defendants who incidentally facilitate a criminal venture" and those who "actively participate in it"). Rather, the dissent asserted, the employer "must wish or desire to bring about" the crime in order to establish the requisite intent. Bourgoin, 187 A.3d at 27 (Jabar, J., dissenting); see Nye, 336 U.S. at 619 ("In order to aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." (quotation omitted)).

The New Jersey Superior Court Appellate Division in Hager concluded similarly to the dissenting justices in Bourgoin. See Hager, 225 A.3d at 148. There, the court ruled that an employer "complying with an order requiring it to reimburse a person for the legal use of medical marijuana" lacked "the requisite intent and active participation necessary for an aiding and abetting charge." Id. We agree with the reasoning of the dissenting justices in Bourgoin and with the New Jersey Superior Court Appellate Division in Hager and conclude that the insurer in this case, if ordered to reimburse Panaggio's purchase of medical marijuana, would not be guilty of aiding and abetting Panaggio's violation of the CSA because the insurer would not be an active participant with the mens rea required by Rosemond.

The insurer asserts, in effect, that Panaggio's argument leads to an absurd result, observing that "[c]onflict preemption applies because state law requires what federal law forbids." (Emphasis added.) The insurer contends that Panaggio's mens rea argument "attempts to use the existence of the conflict to defeat the conflict." However, the insurer's reasoning misses the

8

mark. If the CSA expressly forbade the insurer from reimbursing Panaggio for his medical marijuana purchase, then the insurer would be correct. In that case, federal law, the CSA, would indeed forbid what state law requires. But the CSA does not forbid reimbursement. There is no impossibility here unless, by reimbursing Panaggio, the insurer is guilty of aiding and abetting Panaggio's violation of the CSA. Panaggio's point is that the insurer is not guilty of aiding and abetting because it lacks the requisite mens rea.

For similar reasons, we also conclude that, contrary to the insurer's contention during the Board proceedings, the insurer would not be guilty of conspiring with Panaggio to commit an offense under the CSA. See 21 U.S.C. § 846. Although the Board had no need to reach this issue, we decide it in the first instance because it involves an issue of law. Conspiracy, similar to aiding and abetting, requires voluntary participation. See United States v. Griffith, 928 F.3d 855, 869 (10th Cir. 2019) (setting forth the elements of conspiracy, which include the defendant's knowing and voluntary participation in the conspiracy). As discussed, the insurer's compliance with a court or Board order to reimburse Panaggio for his medical marijuana purchase does not constitute voluntary participation.

### 2. Obstacle Preemption

Having concluded that a Board order requiring the insurer to reimburse Panaggio for the purchase of medical marijuana is not barred by impossibility preemption, we next consider whether it would thwart the purposes and objectives of the CSA. "A [party] making an argument under obstacle preemption faces a heavy burden." Noffsinger v. SSC Niantic Operating Co. LLC, 273 F. Supp. 3d 326, 333 (D. Conn. 2017).

"The Supreme Court has found obstacle preemption in only a small number of cases." In re Volkswagen "Clean Diesel" Marketing, Sales, 959 F.3d 1201, 1212 (9th Cir. 2020), petition for cert. filed, (U.S. Jan. 21, 2021) (No. 20-994). "First, where the federal legislation at issue involved a uniquely federal area of regulation, the Court has inferred a congressional intent to preempt state laws that directly interfered with the operation of the federal program." Id. (quotations and brackets omitted); see Chamber of Commerce of United States of America v. Whiting, 563 U.S. 582, 604 (2011) (plurality opinion). "Second, the Court has inferred that Congress made a considered judgment or a deliberate choice to preclude state regulation when a federal enactment clearly struck a particular balance of interests that would be disturbed or impeded by state regulation." In re Volkswagen "Clean Diesel" Marketing, Sales, 959 F.3d at 1212 (quotations omitted); see Geier, 529 U.S. at 879-81 (holding that certain federal safety regulations "deliberately sought a gradual phase-in" of airbags to give manufacturers more time and increase public acceptance, and that state tort law requiring the immediate installation of

airbags would have "stood as an obstacle" to the phase-in program "that the federal regulation deliberately imposed").

"Absent such circumstances, the Supreme Court has frequently rejected claims of obstacle preemption." In re Volkswagen "Clean Diesel" Marketing, Sales, 959 F.3d at 1213. For instance, the Court has declined to infer that Congress intended to preempt state law merely because it overlaps with a federal act. Id. This is particularly so "when the federal statute expressly or impliedly preserves state laws that might overlap with a federal statute." Id.; see Whiting, 563 U.S. at 607 (plurality opinion). Thus, "[t]he mere fact of 'tension' between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." Madeira v. Affordable Housing Foundation, Inc., 469 F.3d 219, 241 (2d Cir. 2006); see Wyeth, 555 U.S. at 575 ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." (quotation and brackets omitted)).

Obstacle preemption "analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." Whiting, 563 U.S. at 607 (plurality opinion) (quotations omitted). "[A]ny evidence of pre-emptive purpose, whether express or implied, must therefore be sought in the text and structure of the [federal] statute at issue." Virginia Uranium, Inc., 139 S. Ct. at 1907 (plurality opinion) (quotations and brackets omitted). We cannot rely upon "unenacted purposes and objectives" that we infer motivated Congress because "in piling inference upon inference about hidden legislative wishes we risk displacing the legislative compromises actually reflected in the statutory text." Id. at 1908 (plurality opinion). Indeed, "[t]he only thing a court can be sure of is what can be found in the law itself." Id. (plurality opinion). Therefore, Supreme Court "precedents establish that a high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal Act." Whiting, 563 U.S. at 607 (plurality opinion) (quotation omitted).

According to the Court, "[t]he main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzalez v. Raich, 545 U.S. 1, 12 (2005); see Pub. L. No. 91-513, 84 Stat. 1236 (1970) (setting forth the complete title of the "Comprehensive Drug Abuse Prevention and Control Act of 1970" of which the CSA is a part); see also 21 U.S.C. § 801 (setting forth congressional findings). "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels." Raich, 545 U.S. at 12-13.

"To effectuate these goals, Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." Id. at 13; see 21 U.S.C. §§ 841(a)(1), 844(a). "The CSA categorizes all controlled substances into five schedules." Raich, 545 U.S. at 13. "The drugs are grouped together based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." Id. "Each schedule is associated with a distinct set of controls regarding the manufacture, distribution, and use of the substances listed therein." Id. at 14.

"In enacting the CSA, Congress classified marijuana as a Schedule I drug." Id.; see 21 U.S.C. § 812(c). "Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." Raich, 545 U.S. at 14; see 21 U.S.C. § 812(b)(1). "By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." Raich, 545 U.S. at 14; 21 U.S.C. §§ 823(f), 841(a)(1), 844(a).

The insurer argues, in a single sentence, that requiring it "to reimburse [Panaggio] would frustrate Congress's intent to control and regulate the traffic and use of controlled substances." However, we are unable to discern how such reimbursement would stand "as an impermissible obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Virginia Uranium, Inc., 139 S. Ct. at 1907 (plurality opinion) (quotation omitted). As previously discussed, the CSA does not make it illegal for an insurer to reimburse an employee for his or her purchase of medical marijuana. Cf. Noffsinger, 273 F. Supp. 3d at 330, 334 (considering whether the CSA preempts a state law provision precluding certain forms of employment discrimination against medical marijuana users, court observes that "[t]he CSA . . . does not make it illegal to employ a marijuana user"). Nor does it purport to regulate insurance practices in any manner. Cf. id. (noting that the CSA does not "purport to regulate employment practices in any manner"). Moreover, a Board order to reimburse Panaggio does not interfere with the federal government's ability to enforce the CSA. Regardless of whether the insurer is ordered to reimburse Panaggio for his medical marijuana purchase, the federal government is free to prosecute him for simple possession of marijuana under the CSA. See 21 U.S.C. § 844(a). Under these circumstances, we conclude that the "high threshold" for obstacle preemption "is not met here." Whiting, 563 U.S. at 607 (plurality opinion) (quotation omitted).

For all of the above reasons, therefore, we reverse the Board's decision and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.